COMMONWEALTH vs. JOSEPH P. REMBISZEWSKI, JR.

Suffolk. Worcester. October 4, 1982. — February 10, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal,* Instructions to jury, Postconviction relief, Appeal. *Words,* "Reasonable doubt."

A defendant's failure during his trial and appeal to raise a claim that the judge, in instructing the jury, erred in using examples of important decisions in the jurors' own lives to define the Commonwealth's burden of proving his guilt beyond a reasonable doubt did not preclude him from raising it on a subsequent motion for a new trial where the rule established by this court in *Commonwealth* v. *Ferreira,* 373 Mass. 116, 128-130 (1977), was not so predictable when the case was tried, or when it was argued, that he could be said to have had a genuine opportunity to raise his claim at that time. [126-130]

The judge at a murder trial erred in including in his instruction to the jury on reasonable doubt specific examples of important decisions in the jurors' own lives and then stating that "proof beyond a reasonable doubt is the same kind of proof and degree of satisfaction or conviction which you wanted for yourself when you were considering one of those very important decisions." [130-135]

INDICTMENT found and returned in the Superior Court on May 8, 1970.

A motion for a new trial, filed on February 19, 1980, was heard by *Meagher,* J. An application for leave to appeal was heard by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk.

*Ned C. Lofton* (*Conrad W. Fisher* with him) for the defendant.

*Thomas A. Rosiello,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was convicted in December, 1970, of murder in the first degree and sentenced to a term of life imprisonment. We affirmed the conviction

after plenary review under G. L. c. 278, § 33E. *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 324 (1973). The defendant filed a motion for a new trial on February 19, 1980. The trial judge died before he could act on the motion and, after hearing, the motion was considered by another judge in the Superior Court, and was denied. The defendant then petitioned a single justice of this court, pursuant to G. L. c. 278, § 33E, for leave to appeal from the denial of his motion. The single justice granted the defendant leave to appeal only in so far as the new trial motion challenged the trial judge's charge to the jury. He otherwise denied the defendant's petition for leave to appeal on the ground that the other issues presented by the motion were not "new and substantial" within the meaning of G. L. c. 278, § 33E. See *Leaster* v. *Commonwealth,* 385 Mass. 547 (1982).

There are two appeals before us. One challenges the judge's charge and the other challenges the single justice's partial denial of the defendant's petition for leave to appeal. We hold that there was error in the charge requiring reversal of the conviction. As a consequence, we dismiss the appeal from the single justice's order as moot.

We summarize the relevant evidence which is set out in greater detail in *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 312-315, 322-324 (1973). Joan Rembiszewski was the wife of the defendant. She was killed in the early morning of October 12, 1969. The Rembiszewskis had left the home of friends at about 12:30 A.M. that morning in the Rembiszewskis' station wagon. Two other couples were traveling in another motor vehicle on Route 146 in Sutton, at about 2 A.M., when they saw the defendant on his hands and knees at the side of the road feebly signalling for help. They stopped. The defendant appeared to be hysterical and kept repeating "Help Joan. They hit her with a hammer," or words to that effect. The police were summoned and they found Mrs. Rembiszewski's body lying beside the Rembiszewskis' station wagon on a cart path in a wooded area off Route 146. Her clothing was in place, and rings

and a wrist watch were undisturbed. According to medical testimony, her death had been caused by severe blows with an instrument which crushed her forehead and upper face. A pool of blood had collected under the victim's head. Her clothing was bloodstained, and a small amount of blood had spattered the exterior of the car next to where she lay. No blood was found on the defendant's person or clothing.

The police took the defendant from the scene to a hospital for a medical examination. He complained of facial and head pains. The examination revealed no gross physical injury other than abrasions on the face and a small puncture on the right heel.

At the trial, the Commonwealth introduced testimony that tended to show that the defendant had a motive to kill his wife. The Commonwealth introduced other evidence in support of the indictment.

The defendant testified that after leaving their friends' home, he and his wife were driving on Grafton Street just west of the Millbury-Grafton town line, when they came upon a vehicle that was parked at an angle to the road and a man, apparently injured, was lying face down near the vehicle. Intending to offer help, the defendant stopped his car and he and his wife began to alight. The man then stood up and, along with an accomplice, forced the Rembiszewskis back into the front seat of the station wagon. The men seated themselves in the rear seat. They ordered the defendant, who was at the wheel, to drive an erratic course that led them to Route 146. Finally the defendant was ordered to pull off Route 146, and to drive down the cart path where the vehicle was subsequently found. When the vehicle stopped, the men ordered the Rembiszewskis from the car and began to strike them. As the defendant stepped out of the car one of them pulled him by the shirt and he lost his glasses. The defendant saw his wife being struck with some instrument. One of the attackers pursued the defendant, hit him over the head with a stick, and knocked him down. The defendant testified that he remembered noth-

ing after that until he was discovered on his hands and knees on the shoulder of Route 146.

Since this is an appeal from the denial of a motion for a new trial after conviction of murder in the first degree, and the conviction has already received plenary review pursuant to G. L. c. 278, § 33E, the defendant is not entitled to reversal of his conviction without establishing specific error. *Commonwealth* v. *Breese,* 389 Mass. 540, 541 (1983). Furthermore, the defendant is not entitled to our determination whether the instructions were erroneous if the issues presented could have been raised at trial or on direct appeal but were not. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 58-59 (1974). *Commonwealth* v. *Underwood,* 358 Mass. 506, 511-512 (1970). However, that rule is not without qualification. We have excused the failure to raise a constitutional issue at trial or on direct appeal when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case. See *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 248, 251 (1980); *Connolly* v. *Commonwealth,* 377 Mass. 527, 529-530 & n.5 (1979); *Commonwealth* v. *Stokes,* 374 Mass. 583, 587-588 (1978). When we excuse a defendant's failure to raise a constitutional issue at trial or on direct appeal, we consider the issue "as if it were here for review in the regular course." *Commonwealth* v. *Kater,* 388 Mass. 519, 533 (1983). If constitutional error has occurred, we reverse the conviction unless the error was harmless beyond a reasonable doubt. *DeJoinville* v. *Commonwealth, supra* at 254. *Commonwealth* v. *Garcia,* 379 Mass. 422, 442 (1980). *Connolly* v. *Commonwealth, supra* at 538. *Commonwealth* v. *Stokes, supra* at 585.

The question that we must answer first is whether the defendant's challenge to the jury instructions raises constitutional issues which he did not have a genuine opportunity to raise at trial or on direct appeal. The defendant's main contention is that in explaining to the jury proof beyond a reasonable doubt the judge made extended references to specific

social and economic decisions in the jurors' own lives, and then stated that the kind of evidence and the degree of proof that were necessary to convict the defendant were the same as those the jurors wanted when they made those important decisions. The defendant asserts that using those examples from the personal lives of the jurors to define the concept of proof beyond a reasonable doubt detracted both from the seriousness of the jurors' duty and from the Commonwealth's burden of proof. He relies on our decisions in *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128-130 (1977), and *Commonwealth* v. *Garcia, supra.*

In *Commonwealth* v. *Ferreira, supra* at 128-130, we reversed a conviction of murder in the first degree because the judge's charge analogized proof beyond a reasonable doubt to the degree of proof that the jurors would have had when they made important decisions in their own lives, and gave specific examples. We reasoned that "these examples understated and tended to trivialize the awesome duty of the jury to determine whether the defendant's guilt was proved beyond a reasonable doubt" and we noted that the examples "detracted both from the seriousness of the decision and the Commonwealth's burden of proof." *Id.* at 129. In *Commonwealth* v. *Garcia, supra* at 440-441, we held that the instructions on reasonable doubt, like those in *Ferreira,* were constitutionally inadequate and that *Ferreira* must be applied retroactively.

In 1970, when this case was tried, and in November, 1972, when it was argued, there had been no foreshadowing of the rule expressed in *Ferreira.* Until December, 1972, when we decided *Commonwealth* v. *Bumpus,* 362 Mass. 672 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), petition for habeas corpus sub nom. *Bumpus* v. *Gunter,* 452 F. Supp. 1060 (D. Mass. 1978), the use of examples of important decisions in the lives of jurors to illustrate the Commonwealth's burden of proof was a common and approved practice. See *Commonwealth* v. *Bumpus, supra* at 681, 682; *Commonwealth* v. *Libby,* 358 Mass. 617,

621 (1971). Our first criticism of the practice was expressed
in *Bumpus, supra* at 682, in which we simply said that the
use of such examples "may not be illustrative of the degree
of certainty required" for proof beyond a reasonable doubt.
We conclude, therefore, that the rule of *Ferreira* was not so
predictable when this case was tried, or when it was argued,
that the defendant's failure to challenge previously the ade-
quacy of the judge's charge on reasonable doubt should pre-
clude him from doing so now.

The relevant portion of the judge's charge appears in the
margin.[1]   "[W]e have never held nor do we now hold, that

---

[1] "Now I said that the Government has the burden of proving the de-
fendant guilty beyond a reasonable doubt.  What do these words mean,
'beyond a reasonable doubt'?  They mean this:

"The Commonwealth has the burden to prove the charges in this in-
dictment against this defendant beyond a reasonable doubt.

"Now proof beyond a reasonable doubt does not mean proof beyond all
doubt, nor proof beyond a whimsical or fanciful doubt, nor proof beyond
the possibility of innocence.

"It is rarely if ever possible to find a case so clear that there cannot be a
possibility of innocence.

"If an unreasonable doubt or mere possibility of innocence was suffi-
cient to prevent a conviction, practically every criminal would be set free
to prey upon the community and such a rule would be wholly impractical
and would break down the forces of law and make the lawless supreme.

"A reasonable doubt does not mean a doubt as may exist in the mind of
a man who is earnestly seeking doubts or for an excuse to acquit a defend-
ant.  But it means such doubt as remains in the minds of reasonable men
who are earnestly seeking the truth.

"A fact is proved beyond a reasonable doubt when it is proved to a
moral certainty, when it is proved to a degree of certainty that satisfies the
judgment and conscience of the jury as reasonable men and leaves in their
minds as reasonable men a clear and settled conviction of guilt.

"When all is said and done, if there remains in the minds of the jury any
reasonable doubt of the existence of any fact which is essential to the guilt
of the defendant on the particular charge in the indictment, the defendant
must have the benefit and cannot be found guilty on that charge.

"Now another way of explaining these words beyond a reasonable
doubt is this:  Reasonable doubt means doubt that you can give a good
reason for on the evidence that you heard in this case.  It is not all kinds of
doubts, all kinds of suspicions.  It must be a reasonable doubt on the evi-
dence.

"It means that the evidence must leave your judgment and your con-
science satisfied that you have reached the correct conclusion.

"Now let me see if I can explain to you in a more practical way what

the use of specific examples necessarily imports error, constitutional or otherwise. . . . We have repeatedly said that

these words beyond a reasonable doubt mean. I am going to turn to certain experiences.

"I am sure all of you after you got through your formal schooling, whether it was elementary or high school or further education, you came to a point in life where you had to make an important decision. You had to decide what work you were going to go into, or what profession, or what business. Now that was an important decision for you to make.

"And you weighed the factors on both sides and you came to a decision.

"Later on there might have been a question of getting married. Well, that was an important decision and you weighed the factors on both sides and you made a decision.

"Later on in life there might have been a question of buying a house, which was an important decision; or, you might have been in a job or in a business for a long period of time and there came a question of changing jobs, going into another business. Well, those were important decisions. And you weighed the factors on both sides and you came to a decision.

"Well, I could go along with other examples of important decisions, such as surgery either for yourself or members of your family. But, anyway, what I am speaking about here is important decisions in your lifetime.

"I am not talking about routine decisions, daily decisions that you make, whether you are going to shave in the morning or at night, or, whether you are going to buy a Motorola T.V. or a Zenith T.V., or a Chevrolet or a Ford car.

"I am talking about important decisions and these are examples that I gave you. There are others as I said before.

"Now when you are faced with the necessity of making a decision or when you were contemplating one of these things, these important matters, you gave careful consideration to all of the reasons or factors on both sides of the question. You allowed yourselves a reasonable period of time in which to deliberate so that you might make the right decision.

"At some point you decided. You either did or did not do the things which you had under consideration. When you did that you were not necessarily free from all doubt. You may have had some lingering doubt but you were sufficiently convinced so that you made the decision. You did the thing or you decided you wouldn't do it.

"Now the kind of evidence and the degree and extent of proof which is required of the Commonwealth in this case to constitute proof beyond a reasonable doubt is the same kind of proof and degree of satisfaction or conviction which you wanted for yourself when you were considering one of those very important decisions.

"If the Commonwealth's evidence meets that test, then it is proof beyond a reasonable doubt. If it does not, it is not. The burden is on the Commonwealth.

"If the Commonwealth fails to sustain that burden as to any essential element of a particular crime — and I will take up those elements later — you must find the defendant not guilty of that crime."

to determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole." *Commonwealth* v. *Smith,* 381 Mass. 141, 145 (1980). After careful consideration of the whole charge, we are convinced that the defendant did not have the benefit of a constitutionally adequate explanation to the jury of the meaning of proof beyond a reasonable doubt.

The judge's instruction that "[a] fact is proved beyond a reasonable doubt when it is proved to a moral certainty, when it is proved to a degree of certainty that satisfies the judgment and conscience of the jury as reasonable men and leaves in their minds as reasonable men a clear and settled conviction of guilt," was correct. However, he then undertook to "explain . . . in a more practical way what [those] words beyond a reasonable doubt mean." After giving the jury several examples of important decisions in their personal lives, the judge instructed the jury that "proof beyond a reasonable doubt is the same kind of proof and degree of satisfaction or conviction which you wanted for yourself when you were considering one of those very important decisions. If the Commonwealth's evidence meets that test, then it is proof beyond a reasonable doubt. If it does not, it is not." The examples of important decisions that had been given by the judge were: what work to go into, whether to get married, whether to buy a house, whether to change jobs after having held one for a long period of time, and whether to undergo surgery.

The judge's use of examples of decisions in the personal lives of the jurors detracted from the seriousness of the issue before them. The decision whether to convict a man of murder in the first degree cannot fairly be placed in the same category as the decisions to which the judge referred. More significantly, the certainty that a juror would want before making such a decision is likely to be considerably less then the kind of certainty that excludes reasonable doubt. As we observed in *Commonwealth* v. *Ferreira,* *supra* at 130, "[w]e do not think that people customarily

make private decisions according to [the beyond a reasonable doubt] standard nor may it even be possible to do so. Indeed, we suspect that were this standard mandatory in private affairs the result would be massive inertia. Individuals may often have the luxury of undoing private mistakes; a verdict of guilty is frequently irrevocable." Human experience teaches that most, if not all, of the decisions to which the judge referred as illustrating the meaning of proof beyond a reasonable doubt are made on the basis of perceptions as to probabilities. Equating the proof that the jurors might have wanted in making decisions with respect to their personal affairs with the degree of certitude necessary to convict the defendant tended to reduce the standard of proof from the criminal standard of proof beyond a reasonable doubt to the standard in civil cases, proof by a fair preponderance of the evidence. See *Commonwealth* v. *Garcia, supra* at 441.

There is no significant distinction between the instructions given in this case and those given in *Ferreira*. In *Ferreira*, the judge told the jury that they "must be sure that Mr. Ferreira is guilty. Otherwise, [they] must give him the benefit of the doubt and acquit him." The jury in *Ferreira, supra* at 128, were then told that they "must be as sure as [they] would have been any time in [their] own lives that [they] had to make important decisions affecting [their] own economic or social lives." The judge went on to give as examples decisions whether to leave school or to get a job, to get married or divorced, to buy a house or to continue to rent, or to leave the community for what, hopefully, would be a better job. In *Ferreira*, the judge defined the degree of certainty necessary for conviction as sureness; the kind of sureness that the jurors would have had when they had to make the type of decision illustrated by the examples he gave. In the present case, the judge defined the degree of certainty necessary for conviction as "moral certainty" and as the "degree of certainty that satisfies the judgment and conscience of the jury as reasonable men and leaves in their minds as reasonable men a clear and settled conviction of

guilt." Just as the judge in *Ferreira* explained what he meant when he said that the jury must be "sure" by giving examples of "important" decisions in their lives, the judge here explained the meaning of "moral certainty" and "certainty that satisfies the judgment and conscience of the jury . . . and leaves in their minds . . . a clear and settled conviction of guilt" by giving the same examples. The meaning of "moral certainty" and of "certainty that satisfies . . . the jury . . . and leaves in their minds a clear and settled conviction of guilt" was qualified by the examples given in this case just as much as the requirement of sureness to convict was qualified by the examples given in *Ferreira*.

In *Ferreira, supra* at 128, the judge charged the jury that in order to convict they must be as sure as they "would have been" when they had to make such decisions as he illustrated by examples. In the case at bar, the judge instructed the jury that in order to convict it was necessary that they have the degree of satisfaction or conviction that they "wanted" for themselves when they were considering the important personal decisions described to them.

The Commonwealth argues that the instructions in the two cases are significantly different because the degree of certainty that a juror would "want" is much greater than the degree he or she "would have" before making a personal decision. We observed in *Commonwealth* v. *Ferguson,* 365 Mass. 1, 12 n.9 (1974), that "[t]he level [of conviction] one would 'want' may be higher than that upon which one would be 'willing to act,' a phrase that has appeared often in the cases." The distinction is without merit. There is no reason to believe that a juror would understand, without explanation, that there is a significant difference between the certainty he would want, and the certainty he would reasonably expect to have, before making the indicated types of personal decisions. Furthermore, we held in *Commonwealth* v. *Garcia, supra* at 441-442, that the definition of reasonable doubt given to the jury in that case did not comport with our decision in *Ferreira* and was erroneous. In *Garcia, supra* at 439 n.9, the judge instructed the jury

with respect to proof beyond a reasonable doubt that in order to convict the defendant the jurors would have to be "as sure as you *want* to be when in your own lives you had to make important decisions involving your personal, your social or your economic lives" (emphasis added). The judge cited examples of such decisions similar to those that were given in the present case. The jury instructions in the case at bar are not distinguishable from those in *Garcia.* As in *Garcia,* the instructions were constitutionally infirm. Furthermore, it makes no difference that during the course of the instructions the judge on several occasions said that the Commonwealth had the burden of proof beyond a reasonable doubt. The jury's knowledge of which party had the burden did not inform them with respect to the extent of that burden.

The Commonwealth argues that the charge in the case at bar was more like the charges in cases in which the judgment was affirmed, such as *Commonwealth* v. *Tameleo,* 384 Mass. 368 (1981), *Commonwealth* v. *Grace,* 381 Mass. 753 (1980), *Commonwealth* v. *Smith,* 381 Mass. 141 (1980), and *Commonwealth* v. *Hughes,* 380 Mass. 596 (1980), than it was like the charges in *Ferreira* or *Garcia.* We do not agree.

It is enough that our conclusion that the charge in this case was infected with constitutional error finds support in reason and in *Ferreira* and *Garcia.* We need not, and we do not, attempt to reconcile our decisions in the several cases in which we have considered a *Ferreira*-type charge since the *Ferreira* case was decided. We note, however, that *Commonwealth* v. *Grace, supra,* was tried after our decision in *Commonwealth* v. *Bumpus,* 362 Mass. 672 (1972), in which the use of jurors' personal decisions was criticized. *Id.* at 682. In *Grace,* we placed substantial reliance on the facts that, despite the criticism in *Bumpus,* the defendant did not object at trial to the judge's reference in his charge to such decisions and that he did not raise the point in his first motion for a new trial or in his appeal. We observed that "[t]he repeated failures of counsel to raise the

point suggest that it was not thought to be critical." *Id.* at 760. *Commonwealth* v. *Hughes, supra,* which involved a conviction of breaking and entering a dwelling house in the nighttime with intent to commit larceny, was also tried after our decision in *Commonwealth* v. *Bumpus, supra,* and on appeal we applied the "substantial risk of a miscarriage of justice" standard articulated in *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). Also, the only personal decision referred to in the charge was a decision whether to undergo surgery. We concluded that in the context of the charge as a whole the example given had "far less tendency to trivialize the jury's duty than the illustrations used in the *Ferreira* or *Garcia* cases." *Hughes, supra* at 601. We also concluded that the judge had "used the heart surgery illustration more to explain the seriousness of the decision than to illustrate the required degree of certainty." *Id.* That is not the same as the present case.

*Commonwealth* v. *Smith,* 381 Mass. 141 (1980), gives more support to the Commonwealth's argument than any of our other cases. However, that case does not overrule *Ferreira* or *Garcia,* nor does it reflect adversely on their reasoning. There the judge illustrated the definition of proof beyond a reasonable doubt by a recitation of examples of personal decisions that was nearly identical to the recitation in the present case. In holding that there was no error, we focused on the judge's emphasis on moral certainty, concluding that that emphasis, together with other appropriate language in the charge, was sufficient for an acceptable definition of the Commonwealth's burden of proof. *Id.* at 146. We are not persuaded that the same conclusion is appropriate here. It is clear in this case that the jury were instructed to treat proof beyond a reasonable doubt, proof to a moral certainty, and proof to a degree of certainty that the jurors would want in making decisions about their futures as equivalent concepts. This was constitutional error, and we need not consider other defects in the charge alleged by the defendant.

This case is unlike *Commonwealth* v. *Garcia, supra,* in which the evidence of the defendant's guilt was overwhelm-

ing. There we were "convinced beyond a reasonable doubt that the error did not contribute to the guilty verdict, and that [the error] was therefore harmless." *Id.* at 442. Here, however, the evidence of guilt cannot be characterized as "overwhelming." There were no eyewitnesses to the murder. The Commonwealth presented a case based on circumstantial evidence which did not compel a conclusion of guilt. The defendant presented evidence that reasonably would have permitted the conclusion that he did not kill his wife and that others did. We cannot say that the evidence in this case so overwhelmingly established the guilt of the defendant that the verdict could not reasonably have been affected by the erroneous charge. See *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 254-255 (1980). Even applying a substantial miscarriage of justice standard, see *Commonwealth* v. *Pisa,* 384 Mass. 362, 363-364 (1981), we would be unable to conclude that the charge did not create a risk of such a miscarriage. We cannot treat the error as harmless.

Accordingly, the judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial. The appeal from the single justice's partial denial of the defendant's petition for leave to appeal is dismissed.

*So ordered.*