## COMMONWEALTH vs. PETER J. LIMONE.

Suffolk. March 5, 1991. - June 6, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal*, New trial, Instructions to jury, Reasonable doubt. *Words*, "Reasonable doubt."

Discussion of criminal cases in which the trial judge's charge to the jury on reasonable doubt was challenged as improper because it included specific examples of personal decisions in the lives of the jurors. [365-368]

In a 1968 criminal trial, the judge's charge to the jury in which the judge included specific examples of personal decisions in the lives of the jurors did not shift the Commonwealth's burden of proof or trivialize the jurors' duty, where the examples explained the seriousness of the factual decision and were not used to illustrate the degree of certainty required, and where specific instructions were given on the seriousness of the jurors' duty and on the Commonwealth's burden of proof beyond a reasonable doubt. [369-370]

INDICTMENTS found and returned in the Superior Court on October 25, 1967.

A motion for a new trial, filed on January 2, 1990, was heard by *Elizabeth J. Dolan*, J.

*Frank L. Bruno* for the defendant.

*Robert J. McKenna, Jr.*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Peter J. Limone, was convicted in July, 1968, of being an accessory before the fact to murder, and of participating in two separate conspiracies to murder. We affirmed the convictions of Limone and his co-defendants in *Commonwealth* v. *French*, 357 Mass. 356 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972). Several other appellate and postconviction remedy attempts litigated

between 1970 and 1976 also failed to overturn the defendant's convictions.[1] The defendant filed a second motion for a new trial on January 2, 1990. After hearing, a judge of the Superior Court denied the motion. A single justice of this court allowed the defendant's application for leave to appeal to the full court only in so far as the motion for a new trial challenged the trial judge's charge to the jury on reasonable doubt. *Leaster* v. *Commonwealth*, 385 Mass. 547, 549 (1982). We affirm the order denying the defendant's motion for a new trial.

The facts of this case are set forth in *Commonwealth* v. *French, supra*, and *Commonwealth* v. *Cassesso*, 360 Mass. 570 (1971), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972). In his appeal, the defendant claims that the trial judge's charge on reasonable doubt was improper because it included specific examples of personal decisions in the lives of the jurors. The defendant relies on a line of cases beginning with *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128-130 (1977), in which we held that, where the judge drew an analogy between proof beyond a reasonable doubt and the making of important decisions in the jurors' personal lives, the use of specific examples of personal decisions trivialized the jurors' duty and the Commonwealth's burden of proof. Although the defendant did not raise this issue at trial, he is not precluded from doing so at this time, because the constitutional theory on which he relies was not sufficiently developed at the time of his trial and appeal.[2] See *Commonwealth* v. *Tameleo*, 384

---

[1] The defendant's first motion for a new trial was denied by a Superior Court judge in 1970, and that denial was affirmed by this court in *Commonwealth* v. *Cassesso*, 360 Mass. 570 (1971). The United States District Court dismissed a Federal habeas corpus petition filed by Limone in 1974, and that dismissal was affirmed in *Grieco* v. *Meachum*, 533 F.2d 713 (1st Cir.), cert. denied sub nom. *Cassesso* v. *Meachum*, 429 U.S. 858 (1976).

[2] There was no foreshadowing of the rule expressed in *Ferreira* until our decision in *Commonwealth* v. *Bumpus*, 362 Mass. 672, 682 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), reviewed on petition for habeas corpus sub nom. *Bumpus* v. *Gunter*, 452 F. Supp. 1060 (D. Mass. 1978), denial of

Mass. 368, 369 n.2 (1981); *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 248 (1980). Furthermore, the theory has been applied retroactively. *Commonwealth* v. *Garcia*, 379 Mass. 422, 438-442 (1980), citing *In re Winship*, 397 U.S. 358 (1970), made retroactive by *Ivan V.* v. *New York*, 407 U.S. 203 (1972).

The relevant portion of the charge appears in the margin.[3] In *Commonwealth* v. *Tameleo*, 384 Mass. 368 (1981), we

---

writ aff'd, 635 F.2d 907 (1st Cir. 1980), cert. denied, 450 U.S. 1003 (1981), where we suggested that such examples "may not be illustrative of the degree of certainty required" for proof beyond a reasonable doubt.

[3]"Now, that doesn't mean beyond any doubt. It means beyond a doubt with a reason behind that doubt. It does not mean beyond a doubt in the mind of someone who is looking for a doubt, and it does not mean to a mathematical certainty. Perhaps I have said this to you already, but I think I can best explain what is meant by convincing a jury beyond a reasonable doubt by correcting [defense counsel] who tried to discuss this same matter in his argument yesterday.

"Suppose you have an important question of your own, a real serious problem, one that means a great deal to your future — whether you should buy a business or not; shall you sell your house and buy another; shall you move your family to another state or not. Questions of serious import, and if you make a mistake, it will be a serious mistake. On the other hand, if you decide correctly, it will be an improvement in your future and that of your family.

"Now, you received some information from a certain person. If he has related the truth, you should make the change. But if he is not telling you the truth, you will make a terrible mistake. Now, shall you believe him or not. You don't know whether he's telling the truth or not. You were not present when this occurrence, this incident took place about which he talked. You don't know whether he's telling you the truth or not. You just have to make up your own mind, and you meditate and you think of him, think of all you know about him, his past, his education, his intelligence, his reputation, anything you know about him you think about. And after serious thought and meditation you say to yourself, 'Well, I don't have enough confidence in him. He doesn't sound correct to me. I'm not convinced.' You have not been convinced beyond a reasonable doubt.

"On the other hand, suppose you say, 'Well, I don't know whether he is telling the truth or not but I have confidence in him. He is in a position to know. I don't know why he shouldn't be telling me the truth. He made a sufficiently good impression upon me for me to accept that story and I am going to make the change.' Then you have been convinced beyond a reasonable doubt.

"Now, that's the whole story. I could tell you about proving a case beyond virtual certainty and I could tell you that you have to believe it to a

scrutinized this very charge in the course of reviewing the appeal from a denial of a motion for new trial of one of Limone's codefendants. There, we held that the charge, read in its entirety, did not so trivialize the concept of proof beyond a reasonable doubt as to require reversal of the convictions. *Id.* at 371. We noted that "[t]he charge emphasized the 'great responsibility' of the jurors to ascertain the truth from the evidence presented, and generally impressed on the jurors the caution and care they must exercise before returning any verdict against any defendant." *Id.*

We recognize that there is a certain amount of tension between *Tameleo* and our later decision in *Commonwealth* v. *Rembiszewski*, 391 Mass. 123 (1984). In *Rembiszewski*, we reversed a conviction of murder in the first degree after finding that the charge on reasonable doubt, which used specific examples of personal decisions in the jurors' lives, was not distinguishable in any significant way from the erroneous charges in *Ferreira* and *Garcia*, and was constitutionally inadequate. *Id.* We reiterated, however, that "we have never held nor do we now hold, that the use of specific examples necessarily imports error, constitutional or otherwise." *Id.* at 128-129, quoting *Commonwealth* v. *Smith*, 381 Mass. 141, 145 (1980). Instead, we repeated our consistent position that "to determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole." *Id.* at 130, quoting *Smith*, *supra*. The charge here is more like those upheld in *Commonwealth* v. *Grace*, 381 Mass. 753 (1980); *Commonwealth* v. *Smith*, *supra*; and *Commonwealth* v. *Hughes*, 380 Mass. 596 (1980), than those found to be defective in *Ferreira* and *Garcia*.

In *Ferreira*, *supra* at 128-129, the judge charged the jury that,

---

moral certainty, but then I would have to explain what is meant by moral certainty or other kinds of certainty."

> "[y]ou must be as sure as you would have been any
> time in your own lives that you had to make important
> decisions affecting your own economic or social lives.
> You know, . . . you couldn't be absolutely, mathemati-
> cally sure that you were doing the right thing — you
> weigh the pros and cons; and unless you were reasona-
> bly sure beyond a reasonable doubt . . . ."

He then gave specific examples of these decisions. *Id.* Simi-
larly, the erroneous charges in *Garcia, supra* at 439 n.9, and
*Rembiszewski, supra* at 128 n.1, also compared the degree of
certainty the jury members should have when rendering a
verdict to the degree they would want when deciding to make
specific changes in their personal lives, after weighing the
pros and cons of making such a change.[4] In criticizing this
type of charge, we stated that "[w]e do not think that people
customarily make private decisions according to this [beyond
a reasonable doubt] standard nor may it even be possible to
do so. Indeed, we suspect that were this standard mandatory
in private affairs the result would be massive inertia." *Fer-
reira, supra* at 130. See *Rembiszewski, supra* at 131
("Human experience teaches that most, if not all, of the de-
cisions to which the judge referred as illustrating the mean-
ing of proof beyond a reasonable doubt [what work to go
into, whether to marry, buy a house, change jobs, have sur-
gery] are made on the basis of perceptions as to
probabilities").

---

[4]In *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 n.9 (1980), the judge
told the jury, "I'm talking about . . . important decisions in your own lives
where you weighed the pros and cons seriously and knowing that it is im-
possible to be absolutely sure, for example, that you were doing the right
thing when you decided to get married or get divorced, to buy a house, but
if you had a reasonable doubt in your mind that this was not the right
thing to do, then you didn't do it, this is what the law means by the expres-
sion, 'beyond a reasonable doubt' . . . ." In *Commonwealth* v. *Rembiszew-
ski*, 391 Mass. 123, 129 n.1 (1984), the judge also compared the jurors'
decision to personal decisions where "you weighed the factors on both sides
and you came to a decision."

The charge in this case, unlike the charges criticized above, did not compare the jurors' duty in rendering a verdict to weighing the wisdom of taking a future course of action in their personal lives. Rather, the jurors' duty was compared to making a decision as to the truth of a factual proposition, based on the credibility of the person relating it. The judge said, "Now, you received some information from a certain person. If he has related the truth, you should make the change. But if he is not telling the truth, you will make a terrible mistake. Now, shall you believe him or not . . . You were not present when . . . this incident took place about which he talked." The specific examples of personal decisions merely introduced this illustration, and were used to explain the seriousness of the factual decision rather than to illustrate the required degree of certainty.[5] Cf. *Commonwealth* v. *Hughes*, 380 Mass. 596, 601 (1980) (charge not erroneous because the judge "used the heart surgery illustration more to explain the seriousness of the decision than to illustrate the required degree of certainty").

Furthermore, in other portions of the charge the judge instructed that "each of you should vote as your conscience dictates, and your conscience alone," that "[a] false verdict against a defendant is as deep an injury to the community as a false verdict in favor of the defendant. A verdict must be a true verdict," and that a unanimous verdict is required "[t]o assure deliberation. To assure a dissection, a consideration of every bit of evidence . . . and in that way we get as near to the truth as possible." These statements contributed to im-

---

[5]The defendant's assertion that the charge lowered the burden of being convinced beyond a reasonable doubt to having a "sufficiently good impression" takes the quoted phrase out of the context in which it was used in the charge. The phrase referred to the impression a juror would have after completing the thought process for assessing credibility described in the previous paragraph, where "you meditate and you think of him, think of all you know about him, his past, his education, his intelligence, his reputation, anything you know about him you think about. And after serious thought and meditation you say to yourself . . . I'm not convinced." When read in its proper context, the phrase did not lower the standard of proof beyond a reasonable doubt.

press on the jurors the seriousness of their duty. Accordingly, we reaffirm our conclusion in *Tameleo, supra* at 371, that,

> "[t]he charge emphasized the 'great responsibility' of the jurors to ascertain the truth from the evidence presented, and generally impressed on the jurors the caution and care they must exercise before returning any verdict against any defendant. We conclude that, read in its entirety, 'the charge did not so trivialize the concept of proof beyond a reasonable doubt as to require reversal of the conviction.' *Commonwealth v. Smith,* 381 Mass. 141, 146 (1980)."[6]

Finally, the judge's comment that beyond a reasonable doubt means "beyond a doubt with a reason behind that doubt" would not have shifted the burden of proof by requiring the jury to search for a "reason" to acquit, as the defendant argues. Just prior to this comment, the judge had instructed the jury as to the presumption of innocence and had stated that "the burden is on the Commonwealth to convince you beyond a reasonable doubt that the defendant is guilty. The burden of proof is not on the defendant to prove that he is innocent, and the burden of proof is to convince you beyond a reasonable doubt." In light of this instruction and of the charge as a whole, we do not believe that the challenged language could have shifted the burden of proof in the minds of the jurors. See *Commonwealth v. Bjorkman,* 364 Mass. 297, 308 (1973). See also *Commonwealth v. Robinson,* 382 Mass. 189, 198 (1981).

For the foregoing reasons, the order denying the defendant's motion for a new trial is affirmed.

*So ordered.*

---

[6]Because we base our result on other grounds, we need not consider the effect of the Commonwealth's argument that the judge's use of specific examples of personal decisions was invited by and intended to correct the more trivial examples and explanation of reasonable doubt given by defense counsel in closing argument.