## Commonwealth vs. Neil Burnett.

Essex. September 10, 1998. - December 11, 1998.

Present: Wilkins, C.J., Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Practice, Criminal,* Instructions to jury, Postconviction relief, Appeal, Reason-
able doubt, Waiver, Failure to object. *Waiver.*

Where this court's holding in *Commonwealth* v. *Bumpus,* 362 Mass. 672
(1972), foreshadowed *Commonwealth* v. *Ferreira,* 373 Mass. 116 (1977),
sufficiently to alert post-*Bumpus* defendants to the infirmities in jury
instructions addressed in that case, a defendant who was convicted in 1973
of armed robbery and murder in the first degree, and who failed to raise
the issue of the trial judge's erroneous reasonable doubt instruction at trial
or on direct appeal, waived the issue and could not raise it on collateral
review. [473-474]
Where the holding of *Sullivan* v. *Louisiana,* 508 U.S. 275, 280-281 (1993),
with respect to deficient jury instructions, was foreshadowed by earlier
Federal cases cited by a defendant in his 1981, 1989, and 1992 motions for
a new trial, the defendant waived any issue with respect to such deficient
jury instructions in a later collateral appeal in 1997. [474-477]

Indictments found and returned in the Superior Court Depart-
ment on January 16, 1973.

Following the decision of this court in 371 Mass. 13 (1976),
a motion for a new trial, filed on October 1, 1992, was heard by
*Patti B. Saris,* J.

A request for leave to appeal was considered by *Fried,* J.

*John F. Palmer* for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Com-
monwealth.

Lynch J. On December 11, 1973, a jury found the defendant
guilty of armed robbery and murder in the first degree. In *Com-
monwealth* v. *Burnett,* 371 Mass. 13 (1976), this court affirmed
the convictions after a plenary review of the law and the
evidence pursuant to G. L. c. 278, § 33E. Because the facts and
arguments underlying this appeal are sufficiently recounted in
this court's earlier opinion, we limit our factual summary to the
procedural history.

On April 7, 1981, the defendant filed a pro se motion for a new trial alleging that the jury instruction on reasonable doubt was "far short of the minimum standards [required] by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States."[1]

The judge who presided over the 1973 trial denied the

---

[1]At the 1973 trial, the judge instructed the jury, in relevant part:

"Mr. Foreman and other members of the jury. The cases are at the stage now where, after I instruct you as to the law, you decide the innocence or the guilt of the accused, the defendant. And you decide it based upon the evidence that you have heard, the sworn testimony of the witnesses from the stand, plus the physical exhibits which I have allowed to be marked as exhibits and that you will have with you in the jury room, and from the inferences that you feel are reasonable inferences to be drawn from the evidence you have heard and that you believe.

"It is your function and your function alone to decide what part — all, part, or none — of any witness's story you believe.

"It is your function and your function alone to decide as to what inferences, what conclusions you are going to draw, based upon the evidence that you believe.

"I tell you what the law is. But nobody can ever tell you what happened. You are the ones who determine that.

"If in the course of the charge I refer to any of the evidence — and I will not — I mean, I will not review the testimony — it has been ably done by the attorneys for each side — but if I happen to refer to any of the evidence in the course of the charge — and as you see, I don't prepare a charge in advance — I've been at this thirteen years now, and I don't have to — but I want you clearly to understand, if I refer to any of the evidence, if your memory of the evidence is any different than mine, it is your memory of the evidence that is to guide you, not mine.

"And this is also true if in the arguments by the attorneys, if their memory of the evidence is any different than yours, it is your memory of the evidence that you work with, not theirs.

"Secondly, if I refer to any of the evidence, I want you clearly to understand that I will do so by way of example in order to make the law that you are to apply to the case a little easier for you to understand. And I in no way intend to imply that you are to place any more weight or any more credibility or any more importance on a particular piece of evidence that I happen to mention than on any other evidence in the case.

"Now I tell you what the law is. And at the outset, I want to tell you that the defendant . . . is presumed innocent of both of the charges. This means that you are to draw no inference against him by reason of the fact that he has been arrested, charged with these crimes and indicted by a grand jury.

"A grand jury hears one side of the evidence only — that evidence that the Commonwealth feels is enough to start the legal proceedings off. There is no judge in the grand jury room. The defendant isn't there. The defendant's

defendant's motion, and on October 15, 1981, a single justice of this court denied the defendant's application for leave to appeal pursuant to G. L. c. 278, § 33E.

On June 6, 1989, the defendant again filed a pro se motion for a new trial, this time alleging ineffective assistance of counsel. A Superior Court judge ruled that the motion raised no arguments that could not have been raised earlier and denied

lawyer isn't there. He doesn't have an opportunity to cross-examine any of the witnesses or to put on any evidence of his own.

"An indictment is merely a mechanical way in our procedure in which criminal proceedings are started. You are the ones who decide whether or not the defendant did it.

"I also explain to you that the presumption of innocence means that the defendant does not have to prove that he did not do it. The Commonwealth has to prove that he did. And they have to prove it beyond a reasonable doubt. They have to convince you beyond a reasonable doubt that this defendant is guilty of one or more of the crimes alleged and the elements of which I will explain to you.

" 'Beyond a reasonable doubt' is a legal shorthand expression which stands for the degree of certainty that is required in a criminal case. It does not mean that the Commonwealth has to prove the crimes to an absolute or mathematical certainty. That is not what we are talking about. There will hardly ever be a case so open-and-shut that there isn't a possibility of innocence. That isn't beyond a reasonable doubt. What it really means is that after you discuss the evidence among yourselves, determining, as I said before, what part — all, part, or none — of any witness's story you believe, and what inferences you are going to draw, that you must be sure that the defendant is guilty. Otherwise you have to acquit him; as sure as you would have had to have been in your own mind when you had to make important decisions that would have affected your social or economic life.

"For example, we all know that in the course of our lives, if you had to make a decision, such as whether to quit school and find a job, or go on to other education, whether to get married or stay single, whether to stay married or get divorced, whether to buy a house or continue to rent, whether to pick up your roots and move to another city because you may be able to get a better job there — that any time you have had to decide those questions in your own life, you knew you couldn't be absolutely certain you were doing the right thing. Years later it may turn out that you weren't, however, you know you didn't do it, you didn't change unless and until you were convinced, after weighing all the factors, that you were doing the right thing.

"This is what we mean by 'beyond a reasonable doubt.'

"If you had a reasonable doubt of some action in your own lives that was not the right thing, you didn't act. It means that after weighing the evidence, as I said, evaluating it, if there remains any serious unanswered questions about the guilt of the defendant in your mind, your collective minds, you must give him the benefit of the doubt and acquit him."

the motion. The defendant filed a third motion for a new trial on October 1, 1992, arguing, inter alia, that it was not until the decision in *Commonwealth* v. *Rembiszewski*, 391 Mass. 123 (1984), three years after his first motion for a new trial, that we definitively recognized that our decision in *Commonwealth* v. *Ferreira*, 373 Mass. 116 (1977), should be given retroactive application.[2]

The defendant supplemented his 1992 motion with a pro se memorandum in which he argued that the error in the reasonable doubt instruction at his trial was of a kind that can never be harmless. On February 23, 1993, the motion was denied, in part because error in the reasonable doubt instruction had been raised in the defendant's 1981 motion for a new trial.

On January 17, 1997, the defendant again petitioned a single justice, seeking leave to appeal from the denial of his 1992 motion. The single justice granted leave to appeal "on the issues of the retroactivity and waiver of the claim of error based on a *Ferreira* instruction." We now review the motion judge's denial of the defendant's 1992 motion for a new trial to determine whether the trial judge's reasonable doubt instruction may properly be attacked on collateral review.

In this appeal the defendant argues again that the jury instruction in his 1973 trial was constitutionally flawed under *Commonwealth* v. *Ferreira, supra,* and also that, under *Sullivan* v. *Louisiana,* 508 U.S. 275 (1993), constitutional error of this kind can never be harmless.[3] Finally, the defendant argues that the holdings in these cases were insufficiently developed at the time of his various motions for a new trial such that he has not waived the right to argue these issues on collateral appeal. See *Commonwealth* v. *Amirault,* 424 Mass. 618, 639-641 (1997) (discussing waiver doctrine).

We now conclude that regardless of their merits, as an initial proposition, the defendant has waived these arguments and there is no constitutional bar to applying the waiver doctrine.

[2]In *Commonwealth* v. *Ferreira*, 373 Mass. 116 (1977), this court reversed a conviction on the basis of jury instructions similar to those given in the defendant's trial. The defendant's argument overlooks *Commonwealth* v. *Garcia,* 379 Mass. 422, 441 (1980), in which the court stated: "We believe that *In re Winship,* 397 U.S. 358 (1970), . . . mandates retroactive application of *Ferreira.*"

[3]In the defendant's direct appeal the court commented on the strength of the Commonwealth's case, *Commonwealth* v. *Burnett*, 371 Mass. 13, 17 (1976), which may suggest the result if a harmless error analysis is appropriate.

1. *Waiver of* Ferreira *argument.* In an appeal from the denial of postconviction relief where the conviction has already received plenary review under G. L. c. 278, § 33E, "the defendant is not entitled to our determination whether the instructions were erroneous if the issues presented could have been raised at trial or on direct appeal but were not." *Commonwealth* v. *Rembiszewski, supra* at 126. See *Commonwealth* v. *Ambers*, 397 Mass. 705, 707 (1986). "However . . . [w]e have excused the failure to raise a constitutional issue at trial or on direct appeal when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures . . . ." *Commonwealth* v. *Rembiszewski, supra.*

In *Commonwealth* v. *Ferreira, supra* at 129, this court reversed a conviction where the judge defined reasonable doubt using examples from the jurors' daily lives that "tended to trivialize the awesome duty of the jury to determine whether the defendant's guilt was proved beyond a reasonable doubt." The court supported its decision with a long list of cases going back to 1972 criticizing this type of charge. See *id.*

In *Commonwealth* v. *Ambers, supra*, we affirmed a 1973 conviction on jury instructions suffering from much the same infirmities as those in *Ferreira* and those complained of here. The defendant in *Ambers* was tried and his conviction was affirmed prior to this court's decision in *Ferreira*. Nonetheless, we concluded that defense counsel was sufficiently on notice of the *Ferreira* argument in light of earlier cases foreshadowing *Ferreira*'s holding. See *Commonwealth* v. *Ambers, supra* at 709 n.4 ("Even assuming that our disapproval of specific analogies to the personal decisions of jurors achieved constitutional status in 1980 . . . this result was foreshadowed in 1972"); *Commonwealth* v. *Ferguson*, 365 Mass. 1, 12 (1974); *Commonwealth* v. *Bumpus*, 362 Mass. 672 (1972), vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974).

The instant case comes to us in a procedural posture that is, in every significant way, identical to *Ambers*. In both cases the defendants failed to raise *Ferreira* claims on direct review. As in *Ambers*, we affirmed the present defendant's conviction after *Commonwealth* v. *Bumpus, supra*, but before *Ferreira*. As in *Ambers*, this case is before us pursuant to leave to appeal under G. L. c. 278, § 33E.

We refuse to depart from controlling precedent and today reaffirm our holding that *Bumpus* foreshadowed *Ferreira* sufficiently to alert subsequent defendants to the issue. See *Commonwealth* v. *Ambers, supra* at 708-710. See also *Commonwealth* v. *Limone,* 410 Mass. 364, 365 n.2 (1991) ("no foreshadowing of the rule expressed in *Ferreira* until our decision in *Commonwealth* v. *Bumpus*"); *Commonwealth* v. *Kelleher,* 395 Mass. 821, 825-826 (1985) ("the defendant's challenge of the jury charge is founded on principles first enunciated . . . in *Commonwealth* v. *Bumpus*"); *Commonwealth* v. *Grace,* 381 Mass. 753, 760 (1980) (court relied on defense counsel's failure to object to *Ferreira*-type reasonable doubt instruction in wake of *Bumpus*). Therefore, because the defendant did not raise the *Ferreira* argument on direct (post-*Bumpus*) appeal, G. L. c. 278, § 33E, precludes further review as the issue could have been raised at trial and on direct appeal but was not.[4]

2. *Waiver and retroactivity of the* Sullivan *principles.* In *Sullivan* v. *Louisiana,* 508 U.S. 275, 280-281 (1993), the United States Supreme Court held that a deficient jury instruction describing the burden of proof inherent in the term "beyond a reasonable doubt" creates a structural defect that was not susceptible of harmless error analysis. The Court reasoned that an instruction that understates the reasonable doubt standard violates the defendant's right under the Sixth Amendment to the United States Constitution to be convicted only on a jury's finding of guilt beyond reasonable doubt.

The defendant in the instant case argues that the holding in *Sullivan* v. *Louisiana, supra,* is retroactively applicable to his case. See *Commonwealth* v. *Bray,* 407 Mass. 296, 299-300 (1990) (acknowledging *Teague* v. *Lane,* 489 U.S. 288 [1989]). As with his *Ferreira* claim, however, the defendant did not timely raise this issue and thus this argument is waived. Because of this conclusion, we need not address the retroactivity issue.

The instruction in the present case is less obviously deficient than the one at issue in *Sullivan.* As part of his charge, the judge in *Sullivan* instructed the jury that reasonable doubt "must be such doubt as would give rise to grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the

---

[4]The concurring opinion in *Commonwealth* v. *Latimore,* 423 Mass. 129, 140 (1996) (Wilkins, J., concurring), does not support the proposition that *Commonwealth* v. *Ferreira, supra,* was not foreshadowed at the time of this trial and direct appeal.

evidence or lack thereof. . . . It is an actual substantial doubt." See *Cage* v. *Louisiana*, 498 U.S. 39, 40 (1990) (per curiam) (quoting jury charge Court later stated was "essentially identical" to *Sullivan* charge [508 U.S. 275, 277 (1993)]).

Here the instructional flaw was a poor choice of demonstrative examples within the context of a charge. This charge also contained language emphasizing the presumption of innocence and the duty to convict based only on an independent and careful evaluation of the evidence. Although the judge strayed in using examples from the jurors' lives, he coupled them with a curative preamble: "What [reasonable doubt] really means is that after you discuss the evidence among yourselves, determining, as I said before, what part — all, part, or none — of any witness's story you believe, and what inferences you are going to draw, *that you must be sure that the defendant is guilty. Otherwise you have to acquit him . . .*" (emphasis added).

The distinctions between the charges in *Cage* and *Sullivan* and the one at issue here leave us uncertain whether the charge in this case falls within the Supreme Court's concept of structural error. Regardless of whether it does, however, even structural error is subject to the doctrine of waiver.[5]

In *Hankerson* v. *North Carolina*, 432 U.S. 233, 238 (1977), the Supreme Court reversed a conviction where the jury instruction did not comport with due process requirements under the Fourteenth Amendment to the United States Constitution. North Carolina had argued that reversing the conviction would compel reversals of countless other convictions, regardless of guilt. *Id.* at 239-240. The Court rejected this argument, but went on to point out that, because it was unlikely that many defense lawyers properly objected, States could "insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of *any* claim of error" (emphasis added). *Id.* at 244 n.8. Notably, in *Hankerson* v. *North Carolina*, as in the case now before us, the Court dealt with a jury charge that had the potential to decrease the government's burden to prove guilt beyond a reasonable doubt. *Id.* at 242. It follows then that, under *Hankerson*, defendants can waive even those errors that the Court in *Sullivan* v. *Louisiana*, *supra* at 282, later concluded were "structural."

In *Johnson* v. *United States*, 520 U.S. 461, 465 (1997), the petitioner failed to object to a judge's erroneous instruction

---

[5]We decline to follow *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 568 (1994), cert. denied, 513 U.S. 1091 (1995) to the extent that it is inconsistent with this opinion.

that an element of the perjury charge at issue (materiality) was a judicial, rather than a jury, question. The petitioner argued that, because the error was "structural," she could raise her objection regardless of the requirements of Fed. R. Crim. P. 30. The Court explained that rule 30 is the codified version of the " 'familiar' principle that a right 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Johnson* v. *United States, supra,* quoting *United States* v. *Olano,* 507 U.S. 725, 731 (1993).[6] The Court rejected the petitioner's argument stating, "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure." *Johnson* v. *United States, supra.* The Court ultimately concluded that, regardless of whether the error was "structural," her failure to raise the objection at the proper time was fatal to her claim. Against this backdrop which clearly suggests that all structural error objections can be waived, we find no precedent suggesting the contrary.

In the instant case the defendant supplemented his 1992 motion for a new trial with a pro se memorandum in which he raises for the first time the argument that a flawed reasonable doubt instruction is not susceptible to harmless error analysis. Significantly, the defendant supported this argument with authorities predating his 1989 second motion for a new trial. One such authority is *Lanigan* v. *Maloney,* 853 F.2d 40, 48 (1st Cir. 1988), cert. denied, 488 U.S. 1007 (1989), in which the court stated: "We continue to have serious doubts whether a conviction obtained without a proper reasonable doubt instruction could ever be upheld." The defendant's supplemental memorandum also cites *Dunn* v. *Perrin,* 570 F.2d 21, 25 (1st Cir.), cert. denied, 437 U.S. 910 (1978), wherein the court states that "some constitutional errors may be so substantial that they can never be harmless." The defendant's 1992 supplemental memorandum also cites language from *Rose* v. *Clark,* 478 U.S. 570 (1986), and *Jackson* v. *Virginia,* 443 U.S. 307 (1979), similarly signaling the rule in *Sullivan* v. *Louisiana, supra.* That *Jackson* v. *Virginia, supra,* and *Dunn* v. *Perrin, supra,* predate

---

[6]Federal Rule of Criminal Procedure 30 provides in relevant part: "No party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."

the defendant's 1981 motion for a new trial likewise contradicts his contention that the rule in the *Sullivan* decision was not foreseeable at the time of his earlier proceedings. Thus the defendant's prior arguments demonstrate on their face that, at the time of his 1981 and 1989 motions for a new trial, the rule in *Sullivan* had been foreshadowed.

We therefore affirm the order denying the defendant's 1992 motion for a new trial.

*So ordered.*