COMMONWEALTH *vs.* DAMIEN BYNOE.

No. 98-P-2134.

Suffolk. October 6, 1999. - July 14, 2000.

Present: PERRETTA, LAURENCE, & RAPOZA, JJ.

*Motor Vehicle,* Receiving stolen motor vehicle, Unauthorized use. *Practice, Criminal,* Lesser included offense, Amendment of indictment or complaint.

At the trial of a complaint for receiving a stolen motor vehicle, in which the jury convicted the defendant of use of a motor vehicle without authority on the judge's erroneous instruction that unauthorized use was a lesser included offense of receiving [691-692], no substantial risk of a miscarriage of justice was created, where defense counsel's failure to object to the instruction was inferably a reasoned tactical decision that worked no injustice to the defendant [692-695].

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on January 20, 1998.

The case was tried before *Gregory L. Phillips,* J.

*Eric W. Ruben* for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On January 20, 1998, the defendant was charged by complaint in the Roxbury District Court with carjacking (G. L. c. 265, § 21A), receiving a stolen motor vehicle (G. L. c. 266, § 28), and operating a motor vehicle without a license (G. L. c. 90, § 10). The Commonwealth filed a nolle prosequi on the carjacking count on February 25, 1998, and, about a month later, proceeded to trial on the two remaining counts. At the conclusion of the evidence, the trial judge instructed the jury that the charge of receiving a stolen motor vehicle included a lesser offense, use of the motor vehicle without authority. See G. L. c. 90, § 24(2)(*a*). He did so at the request of the Commonwealth and without objection from the defendant who now appeals from his conviction of that offense, claiming that the

trial judge erred in giving the instruction and that the error created a substantial risk of a miscarriage of justice. Although we conclude that the instruction was erroneous, we affirm the conviction.

1. *The complaint.* After the defendant was arrested without a warrant, the police applied for a criminal complaint on the stated basis that "Def. operated m/v which had been carjacked in Quincy [and] was reported stolen." A police incident report was attached to the application. According to that report, the arresting officer observed the defendant, whom he knew and who he believed did not possess a driver's license, operating a motor vehicle. The officer made inquiry of the defendant and discovered, upon investigation, that the vehicle "had been broadcast as being carjacked . . . [and] it was then confirmed as being stolen." The previously described three-count complaint then issued against the defendant.

2. *The evidence.* At trial on the charges of receiving a stolen motor vehicle and driving without a license, the Commonwealth presented evidence, the testimony of the arresting officer and the owner of the vehicle, Diane Joyce (Diane), showing that on January 18, 1998, at about 5:00 P.M., Diane's husband, Jason Joyce (Jason), reported to the Quincy police that the car he had been driving, Diane's green Dodge Neon, had been carjacked.[1] The police contacted Diane, and she filled out a stolen motor vehicle report that was logged into the Quincy police department computer that same day, thereby making the fact of the reports available to any police officer requesting information about the car. We need not recite all the officer's testimony. It is enough to state that it tracked the facts set out in the application for the complaint and the attached police incident report.

Diane testified that she was the owner of the Dodge Neon and that Jason did not have a driver's license. On January 18, Jason asked her if he could take the car to do an errand. Diane stated that she gave him permission to use the car so long as her son, who was licensed to drive, accompanied him. Jason drove off in the car alone. Diane stated that she had never given the defendant permission to drive her car and that, indeed, she did not even know him.

Testifying on his own behalf, the defendant related that, on

---

[1]Jason was in Florida at the time of trial.

the late afternoon of January 19, he was standing outside a "crack house" on Eustice Street in the Roxbury section of Boston. He saw a heavy set man, in his "thirties," with blonde hair and a mustache, go into the house. The defendant related that he had seen this man at the "crack house" before, about seven times, that on about four of those occasions, he was driving a Dodge Neon, and that he knew him only as "Jim." That afternoon, January 19, he saw "Jim" smoke five "rocks" of cocaine, each costing ten dollars. When "Jim" ran out of money, he sold his "Dr. Seuss" jacket for ten dollars. The defendant said that, after selling his jacket, "Jim" asked him whether he would like to rent the Dodge Neon for two hours for fifty dollars. The defendant accepted "Jim's" offer, paid him fifty dollars, and drove away. It was then about 5:00 P.M. When he returned to the "crack house" two hours later, "Jim" was not there. The defendant was driving around in Roxbury in search of "Jim" when he was arrested.

Called to testify by the defendant, Diane described Jason's physical appearance. Her description was consistent with that given by the defendant. She also stated that Jason owned a "Dr. Seuss" jacket and that it was in his possession on January 20. Moreover, Diane testified that Jason told her that he had seen the defendant's picture in the newspaper, that he did not believe that he was the carjacker, and that he had not identified him as such.[2]

On cross-examination by the Commonwealth, Diane stated that, on January 18, she was notified by the police that Jason was the victim of a carjacking and that he had been taken to a hospital. Upon receiving this information, Diane went directly to the hospital. Jason had a lump on his head and marks on his face, and she was advised by hospital staff that she should watch Jason for signs of a concussion. She also stated that she did not let Jason out of her sight from the time of her arrival at the hospital on January 18 until after her car was returned to her on January 20.

On both direct and cross-examination, Diane related that, as of the time of her arrival at the hospital, Jason had reported the carjacking to the police and that she, as the owner of the car,

---

[2]No objections were taken to any of Diane's hearsay testimony. Consequently, all her statements were received for their substantive value. No argument to the contrary is made on appeal.

reported it as stolen.[3]

3. *The jury instructions and verdict.* Immediately after impanelment, the prosecutor advised the trial judge that he wanted the jury to be instructed on the offense of use of a motor vehicle without the authority of the owner. In making this request, the prosecutor asserted that use without authority was a lesser included offense of the crime charged in the complaint, receiving a stolen motor vehicle. In response to the trial judge's inquiry as to whether the defendant had any objection to the request, defense counsel stated: "Only that I don't think it is a lesser included to receiving a stolen motor vehicle, unless there's some change in the law." The trial judge then deferred ruling on the request until later in the trial. Neither the trial judge's preliminary instructions to the jury nor the prosecutor's opening statement contained any reference to the offense of use without authority.[4]

Immediately prior to the close of the defendant's case, the prosecutor renewed his request that the jury be instructed on the offense of use without authority. Again, the trial judge asked defense counsel whether he objected to the requested instruction. When defense counsel stated that he had "no argument" on the issue, the trial judge inquired: "And no objection?" Defense counsel replied: "Whatever the Court decides to do. I'm not pressing an argument on the issue. If you choose to give a lesser included, I think it's within your authority." The trial judge instructed the jury on receiving and use without authority. As to the latter, he stated:

> "The offense of receiving a stolen motor vehicle includes a lesser offense of use without authority . . . In order to prove the defendant guilty of this offense, the Commonwealth must prove three things beyond a reasonable doubt.
>
> "First, that the defendant used the motor vehicle.
>
> "Second, that at the time he used the motor vehicle he did so without the permission of the owner . . . or the permis-

---

[3]We assume that the carjacking charge against the defendant was nol prossed because, as related by Diane, Jason did not identify him as the carjacker.

[4]As reflected in the transcript, defense counsel reserved his right to make an opening statement but, in fact, never delivered one.

sion of some other person who possessed a legal right of control ordinarily exercised by the owner.

"And, third, that at the time he used the motor vehicle the Defendant knew he was not authorized to use said vehicle."

The jury were given a verdict slip that reflected the three options available to them: not guilty, guilty of the offense as charged, or guilty of the lesser included offense of use of a motor vehicle without authority. The jury returned a verdict of guilty on the charge specified by them on both the verdict slip and in response to the taking of the verdict by clerk, that is, use without authority.

4. *The error.* General Laws c. 263, § 4, provides in relevant part that "[n]o person shall be held to answer in any court for an alleged crime, except upon an indictment by a grand jury or upon a complaint before a district court . . . ." See Mass. R.Crim.P. 3, 378 Mass. 847 (1979). Indictments and complaints are subject to amendment as to form, if without prejudice to the defendant, but not as to substance. See Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979). Whether an amendment is one of substance or form turns upon double jeopardy principles. As explained in *Commonwealth* v. *Snow,* 269 Mass. 598, 609-610 (1930), if an acquittal on the original charge would not bar prosecution on the amended charge, the amendment is one of substance.

On appeal, the Commonwealth correctly concedes that use without authority is not a lesser included offense of the crime of receiving. See *Commonwealth* v. *Guerro,* 357 Mass. 741, 750 (1970); *Commonwealth* v. *Lewis,* 41 Mass. App. Ct. 910, 912 (1996). Consequently, an acquittal on the latter would not bar a prosecution on the former. Had the Commonwealth sought to amend the complaint prior to trial by adding the charge of use without authority, it could not properly have been allowed to do so. Nonetheless, the complaint was "constructively" amended as to substance by reason of the jury instruction sought by the Commonwealth and delivered by the trial judge. "A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the

jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." See *United States* v. *Floresca*, 38 F.3d 706, 710 (4th Cir. 1994), citing *Stirone* v. *United States*, 361 U.S. 212 (1960). The instruction should not have been given.

5. *The applicable standard of review.* Represented by new counsel on appeal, the defendant argues in his brief that the erroneous jury instruction presents a substantial risk of a miscarriage of justice. At oral argument, he expanded the issue and claimed that the instruction was error per se, that is, error which requires us to forgo any consideration of whether the error was harmless and, instead, to presume conclusively that the defendant was prejudiced.

In *Commonwealth* v. *Barbosa*, 421 Mass. 547, 554 (1995), the court concluded that there was a substantial risk that the defendant had been convicted on charges not presented to the grand jury. In reversing the defendant's convictions, the court stated:

> "Although there is no allegation that the defendant's ability to prepare his defense was prejudiced, we do not find that the error was harmless. Cf. G. L. c. 277, § 35. Where there is a substantial risk that the defendant was convicted of a crime for which he was not indicted by a grand jury, we cannot apply a harmless error standard. See *United States* v. *Floresca*, 38 F.3d 706, 711 (4th Cir. 1994). See also *Stirone* v. *United States*, 361 U.S. 212, 217 (1960) (depriving defendant of 'right to be tried only on charges presented in an indictment returned by a grand jury' is 'far too serious to be treated as nothing more than a variance and dismissed as harmless error')."

To the extent *Barbosa* might be read as supporting the defendant's error per se claim, we think it, as well as *Stirone* and *Floresca*, are distinguishable from the present claim. All three cases involved felony prosecutions on indictments and were, therefore, subject to the prohibition embodied in the Fifth Amendment to the Federal Constitution and art. 12 of the Massachusetts Declaration of Rights, that a defendant cannot be tried on felony charges not made by a grand jury and charged in an indictment. The present case involves the violation of a right

provided by statute, G. L. c. 263, § 4, and does not implicate any Federal or State constitutional right.[5]

Additionally, the error is not "structural." "A structural error is one that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless. See *Arizona* v. *Fulminante*, 499 U.S. 279, 309 (1991). Such errors include, for example, deprivation of the right to counsel, trial before a biased judge, and unlawful exclusion of members of the defendant's race from the jury. *Id.* at 310." *Commonwealth* v. *Villanueva*, 47 Mass. App. Ct. 905, 906 (1999). See *Neder* v. *United States*, 119 S. Ct. 1827, 1833 (1999) (commenting that harmless error standard is applied to most constitutional errors); *Commonwealth* v. *Burnett*, 428 Mass. 469, 475 (1998) (stating that "even structural error is subject to the doctrine of waiver").[6]

Because the error does not itself mandate reversal of the defendant's conviction and because the defendant made no objection to the instruction, the defendant's claim boils down to the question of whether a substantial risk of a miscarriage of justice has occurred. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

6. *Discussion.* A factor to be considered in determining whether an error has created a substantial risk of a miscarriage of justice is whether defense counsel's failure to object was

[5]The Fifth Amendment to the Federal Constitution provides, in relevant part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . . " Art. 12 reads, as pertinent, that "[n]o subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him . . . ." Although art. 12 does not expressly speak to felonies and the grand jury, it has not been construed in a manner that would lead us to conclude that the "constructive" amendment of the complaint was in violation of a right secured by art. 12. See *Jones* v. *Robbins*, 8 Gray 329, 342-343 (1857); *Commonwealth* v. *Lyons*, 397 Mass. 644, 646-647 (1986); *Commonwealth* v. *McCravy*, 430 Mass. 758, 761-763 (2000).

[6]In *Burnett*, the court used the term "waiver" in the sense of a "lost" right, see *Commonwealth* v. *Alphas*, 430 Mass. 8, 22 n.1 (1999) (Greaney, J., concurring), rather than as a term signifying a knowing and intelligent relinquishment of a waivable right. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 651 n.23 (1997). Any knowing and intelligent relinquishment of a waivable right by a defendant would not constitute a basis for claiming error. In an abundance of caution, we assume without deciding that the defendant did not make a knowing and intelligent waiver of any statutory right to be put to trial on the sole basis of the offense specified in the complaint.

"simply a reasonable tactical decision." See *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). See also *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999); *Commonwealth* v. *Silva*, 431 Mass. 401, 406 (2000). As noted in *Commonwealth* v. *Amirault*, 424 Mass. 618, 645 n.19 (1997), "[i]nherent in the adversary system is the imperative that choices made by counsel are binding on the defendant."

It can be readily inferred from the record before us that the lack of objection by defense counsel was based upon a deliberate decision rather than an oversight.[7] At trial, defense counsel twice specifically declined to respond or object to the request for the challenged instruction notwithstanding his understanding of the law, that is, that use without authority was not a lesser included offense of receiving a stolen motor vehicle. Instead, he cryptically advised the trial judge: "If you choose to give a lesser included, I think it's within your authority."

The offense set out in G. L. c. 90, § 24(2)(*a*), use without authority, carried a lesser penalty than that provided for under G. L. c. 266, § 28, receiving a stolen motor vehicle. Cf. *Commonwealth* v. *Woodward*, 427 Mass. 659, 664-665 (1998) (policy favoring instructions on lesser included offenses serves public purpose of allowing jury "to convict of the offense established by the evidence, rather than forcing them to choose between convicting the defendant of an offense not fully established by the evidence or acquitting, even though the defendant is guilty of some offense").

Notwithstanding our conclusion that the record shows that the defendant had something to gain by allowing the jury to be instructed on an offense not set out in the complaint and that his trial attorney reasonably chose to put that offense to the jury, we consider whether that reasonable tactical decision nonetheless worked an injustice. In this regard, the defendant's only argument is that but for the instruction on use without authority, he would have been found not guilty on the complaint. We are not as convinced about this claim as the defendant is certain. See *ibid.*

The Commonwealth made strong argument that the chronology of events and Diane's testimony allowed for the inference of knowledge by the defendant that the motor vehicle was

---

[7]Appellate counsel makes no claim that the defendant was deprived of the effective assistance of counsel at his trial.

stolen. On the other hand, the defendant's testimony cast doubt upon Jason's version of events, as related by Diane without objection. Additionally, the defendant does not argue that the instruction that he now challenges was in any way an erroneous statement of the law. That instruction allowed the jury to rely completely upon the defendant's testimony to find him not guilty beyond a reasonable doubt on the offense of receiving a stolen motor vehicle but guilty of the offense of use without authority on the basis that, even assuming that he had rented the car, his use of the vehicle well after 7:00 P.M. was unauthorized.

We conclude that the record before us shows a reasoned tactical decision which succeeded and, here, worked no injustice to the defendant. He is, therefore, bound by the choice.

*Judgment affirmed.*