NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1122

COMMONWEALTH

vs.

WILLIAM MEJIA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On June 8, 2019, law enforcement officers seized a firearm, ammunition, and other evidence[1] during the execution of a search warrant at 7 Carmody Court, apartment 809, in South Boston. The defendant, William Mejia, was subsequently indicted on charges of unlicensed possession of a firearm, possession of ammunition, unlawful possession of a large capacity feeding device, possession of a loaded firearm, discharging a firearm within five hundred feet of a dwelling, and being an armed career criminal. The defendant filed a motion to suppress the evidence, claiming that the affidavit in support of the search warrant failed to establish probable cause that the defendant

---

[1] The search warrant return reflects the seizure of, among other items, a "Toyota car key with remote" and personal identification papers.

participated in the alleged criminal act, and failed to provide a sufficient nexus between the alleged criminal activity and the defendant's apartment. The motion judge held a nonevidentiary hearing in the Superior Court and subsequently issued a memorandum of decision and order denying the motion to suppress. A single justice of the Supreme Judicial Court allowed the defendant's application for leave to file this interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017). We affirm.

Legal standards. We review the question whether there was probable cause to issue a search warrant de novo. See Commonwealth v. Perkins, 478 Mass. 97, 102 (2017). Our analysis of the sufficiency of a search warrant application begins and ends with the "four corners of the affidavit" (citation omitted). Commonwealth v. O'Day, 440 Mass. 296, 297 (2003). In this regard, "we determine whether, based on the affidavit in its entirety, the magistrate had a substantial basis to conclude that a crime had been committed . . . and that the items described in the warrant were related to the criminal activity and probably in the place to be searched" (citation omitted). Id. at 298. "[P]robable cause to believe [that] evidence of criminal activity will be found in a particular place must be demonstrated by a 'nexus' between the crime alleged and the place to be searched." Commonwealth v. Hart, 95 Mass. App. Ct.

2

165, 167 (2019), quoting Commonwealth v. Matias, 440 Mass. 787, 794 (2004).  See also Commonwealth v. Donahue, 430 Mass. 710, 712 (2000) (in reviewing nexus we determine whether affidavit supporting search warrant "provide[s] a substantial basis for concluding that evidence connected to the crime will be found on the specified premises").  Search warrant affidavits "should be interpreted in a commonsense and realistic fashion," and "read as a whole, not parsed, severed, and subjected to hypercritical analysis" (citations omitted).  Donahue, supra.  Finally, we give considerable deference to the magistrate's determination, Commonwealth v. Walker, 438 Mass. 246, 249 (2002), and bear in mind that the "resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants."  Commonwealth v. Germain, 396 Mass. 413, 418 (1985), quoting United States v. Ventresca, 380 U.S. 102, 109 (1965).

Discussion.  In the present case, the judge determined that the affidavit established a sufficient nexus between the criminal activity -- the discharge of a firearm -- and the defendant's residence.  After de novo review, we reach the same conclusion.

The affidavit, drafted by Detective John Shaughnessy of the Boston Police Department, averred, inter alia, that at around 5:58 A.M. on June 8, 2019, the Boston Police Department responded to a "ShotSpotter activation" at 318 Norfolk Avenue in

3

Dorchester; that a Boston police officer was approached by a witness "who stated that the gunshots came from the window of a red, maroon, or burgundy Toyota Camry with a MA license plate of 4YC772";[2] that the witness followed that vehicle to Columbia Road, onto Boston Street, and then saw it make a right turn after 215 Dorchester Street toward the "war monument;" that an inquiry showed the vehicle with Massachusetts license plate 4YC772 to be a 2007 red Toyota Camry that the defendant had been operating when it was involved in a prior motor vehicle accident, with the accident report for that incident listing the defendant's address as 7 Carmody Court; that the defendant's address listed on his Registry of Motor Vehicle license was "7 Carmody Ct.," which is located in the Old Colony Housing Projects; that at 7:02 A.M., two other Boston police officers responded to the Old Colony Housing Projects and located the vehicle parked and unoccupied opposite 1244 Columbia Road, which is "located next to 7 Carmody Ct. in the Old Colony Housing Projects"; that as the officers approached the vehicle, "they heard the sound of a beep coming from the car consistent with the car being locked remotely with a key fob"; that at

_____

[2] The defendant neither claimed in the Superior Court nor argues on appeal that the affidavit failed to satisfy either prong of the Aguilar-Spinelli test. See generally Aguilar v. Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969); Commonwealth v. Upton, 394 Mass. 363 (1985).

4

approximately 7:30 A.M., Detective Shaughnessy and other officers entered 7 Carmody Court and saw the defendant's surname alongside the name "Mendez" on a mailbox for apartment 809; that the officers "knocked on apartment #809" and Kassandra Mendez answered the door; that Mendez acknowledged that the defendant, her husband, was inside the apartment; that the officers asked to speak to the defendant; that the defendant "was asked if the red Toyota parked outside was his and he stated in the affirmative"; that the defendant stated that no other person had access to his vehicle; that police investigators reviewed video surveillance footage that showed the red Toyota driving on Boston Street and on Dorchester Street toward Old Colony Avenue between 5:58 A.M. and 6:03 A.M.; and that the video evidence confirmed "the route described by the witness, who observed the shooting and followed the Toyota."

The above-listed particularized information was more than sufficient to establish probable cause that the defendant committed the crime, and the requisite nexus between the crime and the apartment searched.[3] The witness advised police officers that the gunshots came from a "red, maroon, or burgundy Toyota Camry" with license plate 4YC772. The witness saw that vehicle

_____

[3] To the extent that the affidavit referenced the defendant's arraignment history and purported gang-related history, we do not rely on such averments in our probable cause analysis. See Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 82 (2020).

5

drive away and followed it as it made turns and traveled toward the "war monument," which was on the route to the defendant's residence. Video evidence confirmed the witness's description of the route taken by the vehicle. Approximately one hour after the shots were fired, officers saw the red Toyota parked adjacent to the defendant's address. As they approached the vehicle, the car beeped, consistent with the remote locking of the vehicle with a key fob. Combined with the defendant's presence at the residence a mere hour after the crime, the location and locking of the vehicle, and his admission that he had sole and exclusive access to the vehicle, it was reasonable to infer that the defendant had participated in the crime, returned to his residence, and that evidence of the crime "reasonably may be expected to be located" at the defendant's apartment (citation omitted). Commonwealth v. Thevenin, 82 Mass. App. Ct. 822, 825 (2012). Ample precedent supports our determination. See, e.g., Commonwealth v. Alexis, 481 Mass. 91, 103 (2018) (reasonable to expect handgun would be located in defendant's home one day after committing armed home invasion); Commonwealth v. Rand, 363 Mass. 554, 562 (1973) (directed verdict motion properly denied where in addition to circumstantial evidence that defendant was driving car on street half-hour before accident, there was evidence he "had authorized no one else to use the car and that he had sole possession of

6

the keys to the ignition"); Commonwealth v. Fleurant, 2 Mass. App. Ct. 250, 255 (1974) (unlike drugs, "weapons [are] not likely to be consumed or destroyed"). Contrast Hart, 95 Mass. App. Ct. at 167-168 (observation of firearm stored in defendant's home sixty days before application for search warrant insufficient to establish timely nexus between crime and location searched). Although the defendant conjures possible scenarios in which another person could have fired the gun, a search warrant application need not disprove all other possibilities. See Commonwealth v. Guastucci, 486 Mass. 22, 26 (2020) (probable cause "is not a high bar," it "does not require definitive proof of criminal activity," and "officers need not rule out a suspect's innocent explanation for suspicious facts to obtain a warrant" [quotations and citations omitted]); Commonwealth v. Clagon, 465 Mass. 1004, 1006 (2013) (search warrant application "need not establish to a certainty that the items to be seized will be found in the specified location, nor exclude any and all possibility that the items might be found elsewhere" [citation omitted]); Commonwealth v. Harmon, 63 Mass. App. Ct. 456, 461 (2005) ("The test is probable cause, not certainty"). To hold otherwise would require a hypercritical analysis and parsing of the affidavit that we are compelled to reject. See Commonwealth v. Diaz-Arias, 98 Mass. App. Ct. 504, 508 (2020). See also Commonwealth v. Perez, 90 Mass. App. Ct.

7

548, 551 (2016), quoting <u>Brinegar</u> v. <u>United States</u>, 338 U.S. 160, 175 (1949) ("In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act").

<u>Order denying motion to suppress affirmed</u>.

By the Court (Neyman, Shin & Hodgens, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: February 15, 2023.

---

[4] The panelists are listed in order of seniority.