APPEALS COURT 
 
 COMMONWEALTH vs. SCOTT McCAFFREY

 
 Docket:
 23-P-20
 
 
 Dates:
 December 14, 2023 - August 29, 2024
 
 
 Present:
 Hand, Hershfang, & Brennan, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Rape. Indecent Assault and Battery. Practice, Criminal, Amendment of indictment or complaint, Indictment. Evidence, First complaint, Prior consistent statement, Prior misconduct. Practice, Criminal, Instructions to jury, Argument by prosecutor. Witness, Credibility.
 
 

             Indictments found and returned in the Superior Court Department on June 29, 2020.
            A motion to amend indictments was heard by Susan E. Sullivan, J., and the cases were tried before Brian A. Davis, J.
            Emma Quinn-Judge (Jennifer M. Herrmann also present) for the defendant.
            Arne Hantson, Assistant District Attorney, for the Commonwealth.
            HAND, J.  After a jury trial, the defendant was found guilty of one count of disseminating harmful matter to a minor under G. L. c. 272, § 28; one count of lewd, wanton, and lascivious conduct under G. L. c. 272, § 53; five counts of rape of a child aggravated by age difference, under G. L. c. 265, § 23A (a); and four counts of indecent assault and battery on a child under the age of fourteen under G. L. c. 265, § 13B.[1]  He appeals from these convictions, claiming multiple errors related to (1) the amendment of the indictments for rape of a child aggravated by age difference; (2) the admission of certain evidence, including evidence related to the victim's "first complaint"; (3) the judge's jury instructions; and (4) the prosecutor's closing argument.  For the reasons set forth below, we affirm the convictions.
            Background.  We summarize the facts as the jury could have found them, reserving certain details for later discussion.  The defendant was the victim's father's best friend, whom the victim thought of as an uncle.  Around the time the victim was eight years old, the defendant's then-girlfriend (defendant's girlfriend) began babysitting the victim and her younger sister a few times per week.  After some time, the defendant's girlfriend took a job outside the home, and the defendant assumed her babysitting role, watching the girls at his house.  Several months into this babysitting arrangement, the defendant began sexually abusing the victim.
            The sexual abuse consisted of at least twenty sexual assaults in the defendant's home office, two sexual assaults in his bedroom, and one sexual assault in his shower.[2]  The sexual assaults that occurred in the defendant's home office typically followed the same pattern.  The defendant would suggest that the victim do her homework in his office, away from the other children.  After leading her into the office, the defendant would lock the door behind them, then place the victim on his lap, occasionally telling her to take off her clothes.  Once the victim was on his lap, the defendant would play pornography on his computer and masturbate while touching the victim's chest and her vagina "[i]nside the lips," "where [she] pee[s] from."  As time went on, the sexual abuse escalated, and the defendant began using a vibrator on the victim.  When the victim was in fifth grade, the defendant stopped babysitting her, and the sexual abuse ended.  The defendant testified at trial and denied the allegations against him.  His main defense at trial was that the victim fabricated those allegations.
            The victim first reported the defendant's abuse when she was fourteen years old.  In January 2020, she disclosed details of the abuse to her boyfriend.  Later that January, the victim described the abuse in more detail during a sexual assault intervention network (SAIN) interview.  She then met with police and members of the district attorney's office on three more occasions –- in June 2020, May 2021, and March 2022.  The defendant was indicted in June 2020; as we discuss, infra, the indictments were amended in March 2022, and trial commenced in April 2022.
            Discussion.  1.  Amended indictments.  The defendant first challenges the amendment of six original indictments for rape of a child aggravated by age difference under G. L. c. 265, § 23A (b), to allege rape of a child aggravated by age difference under subsection (a).  General Laws c. 265, § 23A, punishes the rape of a child under sixteen aggravated by any of the following three factors, which are set forth in the disjunctive:
"(a) there exists more than a 5 year age difference between the defendant and the victim and the victim is under 12 years of age;
"(b) there exists more than a 10 year age difference between the defendant and the victim where the victim is between the age of 12 and 16 years of age; or
"(c) at the time of such intercourse, [the defendant] was a mandated reporter as defined in section 21 of chapter 119."
The potential punishment is the same under all three subsections of § 23A -- a mandatory minimum sentence of ten years, and up to life imprisonment.  G. L. c. 265, § 23A (c).  Here, in June 2020, the Commonwealth presented a grand jury with evidence that the defendant repeatedly raped the victim, beginning when she was eight and continuing until she was ten years old; the defendant is thirty-nine years older than the victim.  The grand jury indicted the defendant on six counts of rape of a child aggravated by age difference under G. L. c. 265, § 23A (b), alleging that the victim was between twelve and sixteen years of age and that the defendant was at least ten years older than the victim.  The indictments correctly described the age difference between the defendant and the victim as being more than ten years, but they incorrectly alleged that the victim was "between the ages of 12 and 16," when, in fact, she was at all relevant times under twelve years of age.
            Approximately one month before the scheduled trial date in 2022, the Commonwealth moved to amend the indictments for rape of a child aggravated by age difference to allege violations of § 23A (a), rather than § 23A (b), to conform the indictments to the evidence presented to the grand jury.  At the hearing on the Commonwealth's motion, defense counsel objected to the proposed amendments, citing to Commonwealth v. Ruidiaz, 65 Mass. App. Ct. 462 (2006), and arguing that the amendments improperly changed "elements of the offense[s]" as the grand jurors had voted on them.[3]  The motion judge concluded that the proposed amendments were proper because they neither prejudiced the parties nor materially changed the work of the grand jury;[4] on that basis, the motion judge allowed the amendments.[5]  A jury convicted the defendant on five of the six amended indictments.
            The defendant maintains that the amendments were substantive and, because substantive changes to an indictment amount to structural error, his convictions for rape of a child aggravated by age difference under G. L. c. 265, § 23A, must be reversed.  We do not agree.
            Under rule 4 (d) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 849 (1979), "a judge may allow amendment of the form of a[n] . . . indictment if such amendment would not prejudice the defendant or the Commonwealth" (emphasis added).  By contrast, a judge may not amend the substance of an indictment because "crime[s] must be 'proved as charged,' [so as to] protect[] the grand jury's role in the criminal process."  Commonwealth v. Hobbs, 385 Mass. 863, 869 (1982), quoting Commonwealth v. Grasso, 375 Mass. 138, 139 (1978).  See Jones v. Robbins, 8 Gray 329, 344 (1857) (indictment procedure intended to protect against "hasty, malicious and oppressive public prosecutions").  "Article 12 [of the Massachusetts Declaration of Rights] adds the requirement that [amendments of form] not 'materially change[] the work of the grand jury.'"  Commonwealth v. Miranda, 441 Mass. 783, 787 (2004), quoting Commonwealth v. Knight, 437 Mass. 487, 492 (2002).  On appeal, the defendant makes no argument that he was prejudiced by the amendment of the indictments, nor that the amendments materially changed the work of the grand jury.  The issue in this appeal is narrow and limited to whether the amendments were substantive.
            "Matters of form are those that are 'not essential to the description of the crime charged.'"  Knight, 437 Mass. at 492, quoting Commonwealth v. Snow, 269 Mass. 598, 606 (1930).  The usual test for distinguishing between amendments to substance and amendments to form asks whether "an acquittal on the original charge would . . . bar prosecution on the amended charge."  Commonwealth v. Garcia, 95 Mass. App. Ct. 1, 4-5 (2019), quoting Commonwealth v. Bynoe, 49 Mass. App. Ct. 687, 691 (2000).  If not, then the amendment is one of substance; if so, then the amendment is one of form.  See id.  Cf. Ruidiaz, 65 Mass. App. Ct. at 464 (amendment from unaggravated form of offense to aggravated form of offense "added an essential element of the offense," and was therefore "one of substance even though it may arguably pass the double jeopardy test").
            Here, an acquittal for rape of a child aggravated by a ten-year age difference under § 23A (b) would bar prosecution for rape of a child aggravated by a five-year age difference under § 23 (a) for the same act of penetration.  The predicate offense of § 23A is rape of a child, and this offense is aggravated by the age difference between the victim and the defendant.  All three subsections of § 23A proscribe the same act -- rape of a child -- and impose the same penalty, so if a defendant is acquitted of child rape under any of these subsections, he may not be retried under another subsection for the same act of penetration.  Where, as here, there was one alleged victim, whose age was known to both the grand jury and the trial jury, and one rape alleged in each indictment, an acquittal on an indictment charging the violation of § 23A (b) would conclusively adjudicate the defendant's lack of guilt as to that alleged rape under § 23A (a).
            The amendment is not otherwise essential to the description of the crime charged.  See Knight, 437 Mass. at 492.  See also Ruidiaz, 65 Mass. App. Ct. at 464.  We do not view being at least twelve years old as an element of rape of a child aggravated by age difference under G. L. c. 265, § 23A (b); the Commonwealth need prove only that the child was under sixteen years old to convict under this subsection.  See Commonwealth v. Dobbins, 96 Mass. App. Ct. 593, 595-596 (2019) ("we think it apparent that the language 'on a person who has attained age fourteen' in [G. L. c. 265, § 13H,] was intended to differentiate that crime from the crime of indecent assault and battery on a child under age fourteen.  It was not intended to create an element that the Commonwealth must prove beyond a reasonable doubt").  By contrast, to convict under subsection (a) and apply the more stringent five-year age gap, the Commonwealth must prove that the victim was under twelve years old.
            We conclude that the amendments to the original indictments in this case changed only their form, and not their substance.  Accordingly, reversal of the defendant's convictions under G. L. c. 265, § 23A (a), is not required in this case.[6]  See Garcia, 95 Mass. App. Ct. at 6.
            2.  First complaint testimony.  a.  First complaint witness.  First complaint evidence is limited to testimony about the details and circumstances of the victim's first disclosure of sexual abuse, from (under most circumstances) the first person to whom the victim spoke about it.  See Commonwealth v. McCoy, 456 Mass. 838, 845 (2010).  See also Commonwealth v. King, 445 Mass. 217, 246 (2005), cert. denied, 546 U.S. 1216 (2006) (first complaint evidence limited to first complaint witness's "observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false allegation").  "[W]here a complainant makes successive complaints to the first complaint witness, only the initial complaint . . . is admissible as first complaint evidence."  Commonwealth v. Aviles, 461 Mass. 60, 70 (2011).
            The Commonwealth moved in limine for leave to allow "first complaint" testimony by the victim's boyfriend.  As described in the Commonwealth's motion, the boyfriend's anticipated testimony included his account of the time and circumstances of the victim's first complaint to him, and repetition of the victim's statements that "the defendant had touched her [vagina] when she was little," that he had made her watch pornographic videos in his locked office, and that the victim sometimes told the other children in the house to go play in another room "to protect [them]."  The motion was allowed, and at trial the boyfriend testified to the information included in the motion in limine; he also testified that during her first disclosure of abuse, the victim told him that the defendant "made her touch his penis."  The defendant did not object to this statement at trial, but on appeal he challenges the propriety of its admission.
            The judge was within his discretion in allowing the boyfriend to testify on direct examination to the victim's statement that the defendant "made her touch his penis," regardless of the fact that this statement was not included in the Commonwealth's motion in limine.  See Aviles, 461 Mass. at 73 (judge's admission of first complaint evidence reviewed for abuse of discretion standard).  Although, on cross-examination, defense counsel elicited the fact that the boyfriend had more than one conversation with the victim about the abuse, nothing about that testimony suggested that the victim's report of being made to "touch [the defendant's] penis" was part of a later disclosure.  See id. ("The judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence").
            Additionally, although we conclude that it was error to permit the boyfriend to testify on direct examination that "[the victim] told [her parents]" about the defendant's abuse, see King, 445 Mass. at 243 (Commonwealth may not introduce "[e]vidence that a complainant repeatedly complained of a sexual assault to several different persons"), we are satisfied that the error did not create a substantial risk of a miscarriage of justice.  See McCoy, 456 Mass. at 850.  The victim's parents testified at trial; it is at least a reasonable inference from the parents' testimony that the victim told them about the defendant's abuse.  "[U]pon review of the case as a whole, we are confident that the defendant suffered no harm" as a result of the error.[7]  Commonwealth v. Hanino, 82 Mass. App. Ct. 489, 495 (2012).
            b.  Investigating officer's testimony about the SAIN interview.  The investigating officer in the case, Sergeant Stephen Marquardt, testified that as part of his investigation into the victim's allegations against the defendant, he attended the victim's SAIN interview.  Marquardt did not testify to anything that the victim said during that interview but did testify to the fact of the interview and to the victim's demeanor during its course.  Specifically, he testified that at "[d]ifferent points, she would burst out crying, crying uncontrollably."  Marquardt also testified that he conducted a "follow-up investigation" after the SAIN interview, but he was not permitted to go into detail about that investigation.  Marquardt's testimony about the SAIN interview was not admissible under the first complaint doctrine.  See McCoy, 456 Mass. at 847 ("The allowance of [an investigating officer]'s testimony of his interview with the victim -- even without substantive details -- is error under the first complaint doctrine, and unfairly enhances the victim's credibility" [footnote omitted]); Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) (testimony regarding "[t]he description of the investigative process" and "[t]he fact that the Commonwealth brought its resources to bear on this incident" is "unnecessary and irrelevant to the issue of the defendant's guilt, and is extremely prejudicial").  However, in light of the defendant's strategy at trial, this error did not prejudice the defendant, let alone create a substantial risk of a miscarriage of justice.  See Aviles, 461 Mass. at 72.  This is because, (1) during cross-examination of the victim (and before Marquardt or any other witness testified), defense counsel marked a transcript of the victim's SAIN interview for identification and used it to impeach the victim, contrasting certain statements in the interview transcript with her testimony at trial, and (2) in closing, defense counsel reemphasized the inconsistencies in the victim's various statements, and specifically called the jury's attention to the details of the SAIN interview.  Where the fact and substance of the SAIN interview formed "a cornerstone of the defense," Marquardt's mere acknowledgement of that interview did not result in a substantial risk of a miscarriage of justice.[8]  See McCoy, supra at 851.
            3.  Prior consistent statements.  The defendant argues that the judge erred by allowing the Commonwealth to elicit prior consistent statements of the victim on redirect examination; he directs our attention to eleven specific statements.[9]  The defendant did not object to the substance of any of this testimony at trial; thus, to the extent we discern an abuse of discretion, our review is for a substantial risk of a miscarriage of justice.  See McCoy, 456 Mass. at 845-846.
            Generally, prior consistent statements by a witness are inadmissible, see Mass. G. Evid. § 613(b)(1) (2022), and "impeachment of a witness by prior inconsistent statements or omissions does not, standing alone, entitle the adverse party to introduce other prior statements made by the witness that are consistent with [her] trial testimony."  Commonwealth v. Vuthy Seng, 456 Mass. 490, 498 (2010), quoting Commonwealth v. Bruce, 61 Mass. App. Ct. 474, 482 (2004).  However, when a witness has been impeached by prior inconsistent statements or omissions during cross-examination, "the Commonwealth is permitted to rehabilitate the witness by asking questions designed to explain or contradict the inconsistency even though prior consistent statements by the witness are implicated."  Vuthy Seng, supra at 498-499.  See Commonwealth v. Hall, 66 Mass. App. Ct. 390, 394 (2006), quoting Commonwealth v. Mandeville, 386 Mass. 393, 400 (1982) ("It is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination").
            With these principles in mind, we discern no error in the judge's allowing the Commonwealth to introduce testimony that the victim told her boyfriend about the defendant's use of a vibrator "about a week or two after [she] initially disclosed . . . everything else" to him.  This is because that statement directly contradicted the defendant's assertion that the victim did not mention the vibrator until much later, in her June 2020 interview.
            Although none of the remaining statements at issue correlated directly to prior inconsistent statements elicited on cross-examination, we conclude that the judge did not abuse his discretion by admitting them.  See Commonwealth v. Lessieur, 472 Mass. 317, 323-324, cert. denied, 577 U.S. 963 (2015); Vuthy Seng, 456 Mass. at 499.  "Where, as here, portions of prior statements are the subject of cross-examination and the prior consistent testimony sought to be introduced is itself contained in the prior statements and places the cross-examination concerning the prior statements in context, it is not error to admit the consistent testimony."[10]  Commonwealth v. Hoffer, 375 Mass. 369, 376 (1978).  See Commonwealth v. Rodriquez, 454 Mass. 215, 222 (2009); Commonwealth v. Hollyer, 8 Mass. App. Ct. 428, 432 (1979), citing Commonwealth v. Watson, 377 Mass. 814, 828-834 (1979), S.C., 409 Mass. 110 (1991).
            4.  Jury instructions.  "When reviewing jury instructions, '[w]e evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words.'"  Commonwealth v. Young, 461 Mass. 198, 207 (2012), quoting Commonwealth v. Trapp, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996).  "Generally, we do not require trial judges 'to deliver their instructions in any particular form of words, so long as all necessary instructions are given in adequate words.'"  Commonwealth v. Marrero, 427 Mass. 65, 72 (1998), S.C., 493 Mass. 338 (2024), quoting Commonwealth v. Sarmanian, 426 Mass. 405, 408 (1998).
            a.  The jury's role.  In his final charge to the jury, the judge segued from his instructions on the substantive law to his "general instructions on how [the jurors] should go about [their] deliberations."  Leading into these instructions, the judge told the jurors that their "responsibility in this case," while "grave," "does not extend beyond certain areas."  He continued,
"So for example, you are not responsible for the conduct of this trial.  You're not responsible for what the [d]efendant may have done if anything.  You're not responsible for any punishment that may flow if any does.  These things are simply not your responsibility, and you must not burden yourselves with them.  You need not be concerned about these matters when you consider the evidence and work to reach your verdicts in this case."
            The defendant objected at trial, both before and after the final charge,[11] to the inclusion of the sentence, "You're not responsible for what the [d]efendant may have done if anything."[12]  On appeal, he asserts that this statement improperly drew the jury's attention to the impact or consequences of the charged conduct, and in doing so, it invited a verdict that was not based on the evidence.  See Commonwealth v. Sanchez, 70 Mass. App. Ct. 699, 701 (2007), quoting Commonwealth v. A Juvenile (No. 1), 396 Mass. 108, 112 (1985) (instructing jurors on sentencing consequences of verdict disfavored because "jury's verdict must be based solely on the evidence in the case").  While the challenged portion of the instruction serves no clear purpose, and we think the sentence better omitted in future, we are not persuaded that either the sentence in isolation, or the instruction as a whole, detracted from the instructions confining the jury's deliberations to the evidence presented at trial.  The challenged instructions did not suggest that the jury should decide the case as "the conscience of the community," Commonwealth v. Mathews, 31 Mass. App. Ct. 564, 572-573 (1991), cert. denied, 504 U.S. 922 (1992); indeed, the judge explicitly impressed on the jury that they should not concern themselves with the consequences of the charged conduct.  See A Juvenile (No. 1), supra (instruction proper where "judge went out of his way to impress on the jury the fact that punishment was not a matter for their concern").[13]
            b.  Lesser included offense.  The judge also denied the defendant's request for an instruction on indecent assault and battery, a lesser included offense of aggravated rape.[14]  On request, a judge must give a lesser included offense instruction whenever "an element distinguishing the two crimes is sufficiently in dispute so that a jury could rationally find the defendant 'innocent of the greater and guilty of the lesser included offense.'"  Commonwealth v. Drewnowski, 44 Mass. App. Ct. 687, 693 (1998), quoting Commonwealth v. Egerton, 396 Mass. 499, 504 (1986).  Here, the element distinguishing the lesser included crime of indecent assault and battery from the greater offense of rape of a child aggravated by age difference is the element of penetration.  See Commonwealth v. Donlan, 436 Mass. 329, 335-336 (2002).  Penetration requires touching of the victim's vagina, vulva, or labia.  See id. at 336.
            Viewing the evidence as a whole and taking all reasonable inferences in the defendant's favor, see Drewnowski, 44 Mass. App. Ct. at 693, the element of penetration was not sufficiently in dispute to warrant a lesser included instruction on indecent assault and battery.  Even if it were true that before trial, the victim said only that the defendant touched her "down below" and on "the top part," her testimony at trial that the defendant touched her "in between my lips, where I pee from," was more than sufficient to establish penetration.  See King, 445 Mass. at 224.  "[T]he mere possibility that the jury might not credit a portion of the Commonwealth's evidence" is not sufficient to put into question the element of penetration.  Commonwealth v. Porro, 458 Mass. 526, 536 (2010), quoting Donlan, 436 Mass. at 337.
            c.  Uncharged bad acts instruction.  At trial, the Commonwealth introduced two uncharged bad acts of the defendant -- the car incident and the playroom incident -- for the limited purpose of showing the nature of the relationship between the defendant and victim.[15]  We are not persuaded by the defendant's argument that the judge's instructions permitted the jury to use the testimony about these incidents as evidence of propensity or bad character.  The judge gave two contemporaneous instructions, each of which explicitly limited the jurors' use of the uncharged bad acts evidence by telling the jury not to consider the evidence as proof that the defendant had a criminal personality or bad character.  In his final charge to the jury, the judge stated,
"[Y]ou may consider [these acts] solely with respect to the nature of any relationship that may have existed between the [d]efendant and [the victim] . . . and to present as full a picture as possible of the events surrounding the incidents with which the [d]efendant actually is charged.  Again, you may not consider the other alleged conduct for any other purpose in your deliberation."
Although it would have been preferable to include the explicit limiting language of the contemporaneous instructions in the final instructions, as well, the instructions as a whole were sufficient.  We assume that the jury understood the judge's explicit instruction that they may use the uncharged bad acts evidence only to illuminate the nature of the relationship between the defendant and the victim.  See Marrero, 427 Mass. at 73 ("By explicitly limiting the jurors' use of the evidence, the judge provided sufficient guidance, and imparted to the jurors sufficient understanding of the improper use of the evidence").
            d.  First complaint instruction.  We are not persuaded by the defendant's challenge to the judge's instruction on first complaint.  The judge's instructions, which were given three times,[16] tracked both the language of the seminal case on first complaint testimony, King, 445 Mass. at 247-248, and the model jury instructions.  See Massachusetts Superior Court Criminal Practice Jury Instructions § 7.10, at 7-34 (Mass. Cont. Legal Educ. 2018).  In each instance, the judge instructed the jury that they could consider only the victim's "first report" or what the victim "first reported."  The defendant did not request the further instruction that he now argues the judge was required to have given, that where a victim makes multiple disclosures to a single person, the jury should consider only the first disclosure to that person, see Commonwealth v. Arana, 453 Mass. 214, 222-223 (2009), and we need not consider whether such additional instruction was required sua sponte.  We are confident that a reasonable juror would have understood that the judge's instruction limiting the jury's consideration to the victim's "first report" meant just that -- that the jury could consider only the victim's initial disclosure.
            5.  Closing argument.  "We consider remarks made during closing 'in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury.'"  Commonwealth v. Andre, 484 Mass. 403, 417-418 (2020), quoting Commonwealth v. Felder, 455 Mass. 359, 368 (2009).  Where, as here, the judge "properly instructed the jury that the closing argument was not evidence, . . . we must presume that the jury understood that instruction."  Andre, supra at 418, citing Commonwealth v. Kolenovic, 478 Mass. 189, 200 (2017).  The defendant objected to the first alleged improper argument; thus, we review that claim for prejudicial error.  See Commonwealth v. Alvarez, 480 Mass. 299, 305 (2018).  We review the remaining unpreserved challenges for a substantial risk of miscarriage of justice.  See Commonwealth v. Desiderio, 491 Mass. 809, 815 (2023).
            a.  Generalizing about sexual assaults.  In closing, the prosecutor argued that the Commonwealth's witnesses, and the victim in particular, were credible because they had no motive to fabricate the allegations against the defendant.  The prosecutor pointed out possible reasons why the victim might have made inconsistent statements over the years, and she told the jury that they should not discredit the prosecution based on its reliance on testimonial evidence about the abuse, rather than physical evidence, because "most sexual assaults . . . are not eye witnessed by a person . . . and they are not video recorded."  The defendant objected to this statement.
            The prosecutor's generalized statements described above came close to constituting improper argument because they did not focus on the evidence.  "Prosecutors must limit the scope of their arguments to facts in evidence and inferences that may reasonably be drawn from the evidence."  Commonwealth v. Coren, 437 Mass. 723, 730 (2002).  To do otherwise might encourage a jury to "rely on [the prosecutor's] experience and not on the evidence."  Commonwealth v. Wilson, 427 Mass. 336, 352 (1998).  While we consider it likely that most jurors would infer that people rarely commit sexual crimes knowing that they are being observed or video recorded, we nonetheless caution against a prosecutor's implying that she has specialized knowledge about sexual assault cases generally.  See Commonwealth v. Greco, 76 Mass. App. Ct. 296, 301 (2010) (matters of common knowledge must be "indisputably true" [citation omitted]).  Cf. Commonwealth v. Beaudry, 445 Mass. 577, 580 (2005) ("Here, the prosecutor exceeded the scope of proper argument by referring to facts not supported by evidence and not within a juror's common knowledge and suggesting an inference that could not reasonably be drawn from the evidence").
            Even assuming that the statement amounted to error, however, we discern no prejudice resulting from it.  See Commonwealth v. Tate, 486 Mass. 663, 669 (2021) (applying prejudicial error standard to error in prosecutor's closing argument).  The challenged statement was an isolated one, made within the prosecutor's systematic review of the evidence presented at trial, and addressed only a collateral issue.  See id.  Considering the context of the prosecutor's closing argument, the lack of any argument by the defendant about the absence of physical evidence, and the judge's final curative instructions, we conclude that this statement could not have made a difference in the jury's conclusions and was not prejudicial.  See id.
            b.  Comments on witness credibility.  The prosecutor also stated that the victim's testimony "wasn't a concocted story[, it] is actually what happened."  The defendant did not object at trial, but he now asserts that this statement improperly vouched for the victim's credibility.  We disagree.  "A prosecutor engages in improper vouching if he or she 'expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.'"  Commonwealth v. Martinez, 476 Mass. 186, 199 (2017), quoting Wilson, 427 Mass. at 352.  It is, however, permissible for a prosecutor to "comment on and urge the jury to draw inferences from the trial evidence, and . . . state logical reasons based on inferences from the evidence why a witness's testimony should be believed" (citation omitted).  Martinez, supra.  In the context of the argument as a whole, we consider the prosecutor's remarks to be "a fair response to [the defendant's] attack on the credibility of [the victim]."  Commonwealth v. Smith, 450 Mass. 395, 408, cert. denied, 555 U.S. 893 (2008), S.C., 493 Mass. 1037 (2024), quoting Commonwealth v. Chavis, 415 Mass. 703, 713 (1993).  The challenged statements urged the jurors to draw a conclusion about the victim's credibility based on the evidence; they did not express the prosecutor's personal belief about the victim's credibility or imply that she had personal knowledge about the truthfulness of the testimony.
            Similarly, during closing, the prosecutor characterized the defendant's testimony as "lies" and described him as "deceptive, calculating, and scheming."  Again, the defendant did not object.  These remarks were risky, see Commonwealth v. Kosilek, 423 Mass. 449, 459 (1996) (probably improper to call defendant "liar" and state that he had constructed "cunning charade" to mislead police), but we conclude that they were permissible because the suggestion "found ample support in the evidence,"  Commonwealth v. Obershaw, 435 Mass. 794, 808 (2002).  "The jury are presumed to understand that a prosecutor is an advocate, and statements that are '[e]nthusiastic rhetoric, strong advocacy, and excusable hyperbole' will not require reversal.'"  Commonwealth v. Sanchez, 96 Mass. App. Ct. 1, 10 (2019), quoting Martinez, 476 Mass. at 199.
            c.  Misstating or exaggerating the evidence.  Finally, the defendant asserts that on several occasions during closing argument, the prosecutor misstated and exaggerated the evidence presented at trial.  We disagree.  "A prosecutor may, . . . in closing argument, analyze the evidence and suggest what reasonable inferences the jury should draw from that evidence."  Commonwealth v. Grimshaw, 412 Mass. 505, 509 (1992).  The inferences "need not be necessary and inescapable, only reasonable and possible."  Commonwealth v. Jones, 432 Mass. 623, 628 (2000).
            The prosecutor's statement that the defendant's girlfriend lived with the victim's family "whenever [the defendant would] kick her out" was supported by the evidence.  Multiple witnesses testified about at least one occasion when the defendant barred his girlfriend from their house, and there was evidence that the defendant's girlfriend stayed with the victim's family on multiple other occasions.  Even if this statement implied, as the defendant suggests, that the defendant "kick[ed] [his girlfriend] out" on more than one occasion, this would have been a reasonable inference from the evidence.
            The prosecutor's statement that the defendant "made sure" to get his girlfriend to stop babysitting the victim "so he could stand in" also was proper.  We are not persuaded that this argument was based on stricken testimony from the victim's father; the statement was supported by evidence that the defendant started babysitting the victim as soon as his girlfriend began working outside their home.  After careful review of the record, we conclude that it would be reasonable for the jury to infer, based on this evidence, that the defendant pressured his girlfriend into taking that job so that he could gain access to the victim.
            Even if we were to agree with the defendant that the prosecutor misstated the evidence by asserting that the boyfriend, as the first complaint witness, testified that the victim "would have to go tell the kids to play in the other room," when the testimony was that the defendant would direct the children to another room, this is a distinction without a difference, and the defendant suffered no prejudice as a result.
            Finally, the prosecutor did not exaggerate the evidence by stating that the defendant sexually assaulted the victim "dozens of times," and that he touched the victim "all over her body" during the bedroom incidents.  The evidence at trial was that the victim was sexually assaulted a minimum of twenty-three times.  The victim also testified that during the incidents that occurred in the bedroom, the defendant spread her legs, used his fingers to touch her vagina "in between [her] lips, where [she] pee[s] from," and touched her chest.
Judgments affirmed.
 
footnotes

 
            [1] The defendant was found not guilty on a sixth count of rape of a child aggravated by age difference.
            [2] There was also evidence of a sexual assault in the playroom and one in the defendant's car, but these incidents were introduced as uncharged bad acts and were not the basis for any of the indictments.
            [3] Defense counsel properly acknowledged "that the grand jury was given information that . . . the alleged victim and the alleged situation fit the description of [§ 23A (a)]."
            [4] Although these statements were accurate, as we discuss infra, the motion judge's reasoning reflects an incomplete consideration of the relevant factors.
            [5] The motion to amend was allowed by a judge who was not the trial judge.
            [6] As we have noted, the defendant does not contend that he was prejudiced by the amendments or that the amendments "materially change[d] the work of the grand jury."  Miranda, 441 Mass. at 787, quoting Knight, 437 Mass. at 492.  We need not and do not decide the impact of such arguments where the facts of the case do not support them.
            [7] In his brief, the defendant makes passing reference to the boyfriend's testimony on cross-examination "that he heard multiple disclosures from the complainant" and "that he gave the police information from another disclosure and his own personal knowledge."  This information was elicited by defense counsel in support of the defense theory that the victim's "story" about the sexual abuse grew and changed over time.  See Commonwealth v. Parreira, 72 Mass. App. Ct. 308, 318 (2008) (first complaint doctrine does not prevent defendant from strategic development of evidence about victim's complaints).  We are not persuaded that the point the defendant makes here aids his argument on appeal.  See Commonwealth v. Hanino, 82 Mass. App. Ct. 489, 496 (2012).
            [8] We are not persuaded that the admission of Marquardt's affirmative response to the prosecutor's question on direct examination, "And in addition to your attendance at that SAIN interview, did you do any follow-up investigation?" requires a different conclusion.  Even if this testimony indicated that Marquardt believed the victim, any error in allowing this testimony "was overcome by the benefits received in cross-examination, and the error in admitting this testimony did not prejudice the defendant's case," McCoy, 456 Mass. at 852, because it would have been readily apparent to the jury that the police continued their investigation into the victim's allegations.  Defense counsel objected to the Commonwealth's attempt to elicit any further details about the investigation, the objection was sustained, and the investigation was not mentioned again.
            [9] We understand the challenged statements to include the victim's testimony as follows:  (1) the defendant used a vibrator on the victim; (2) the defendant touched her "where pee came out of"; (3) the defendant "would pleasure himself, and watch [the victim] while he was pleasuring himself, and watch the porn at the same time" before ejaculating; (4) the defendant instructed the victim to take her clothes off; (5) the defendant told the victim to put her clothes back on after he ejaculated; (6) the defendant positioned the victim's body on his bed and spread her legs; (7) the defendant washed the victim's body and vagina and pressed his penis against her back during the shower incident; (8) "things happened" once in the shower, twice in the bedroom, and at least twenty times in the defendant's office; (9) the victim felt like she did not have a voice; (10) the defendant told the victim that "he could wait" to have her touch his penis; and (11) the victim's "private area" would be in "pain and discomfort, and it would be [red]."
            [10] To the extent the defendant asserts that redirect examination of the victim went beyond the scope of cross-examination, we disagree.  Where "[t]he subject matter of the statements [from the SAIN interview] was opened up on cross-examination, . . . an exploration of them on redirect was clearly within the scope of cross-examination."  Commonwealth v. Hoffer, 375 Mass. 369, 375 (1978).  "Further, even if the redirect examination had exceeded the scope of cross-examination, the judge has discretion to allow or limit redirect concerning matters not touched on in cross-examination."  Id.
            [11] The judge provided counsel with draft jury instructions and held a charge conference on the record after the close of all the evidence.
            [12] The precise nature of the objection is not clear from the transcript.
            [13] The defendant relies on Commonwealth v. Wolfe, 478 Mass. 142 (2017), for the proposition that the instruction was improper because, even though the judge warned the jury against drawing negative inferences, in practice, the language of the instruction unnecessarily drew the jurors' attention to an unfavorable fact.  Because the question in Wolfe was whether a judge should instruct a jury about the absence of alcohol-test evidence in an operating under the influence case, which is a constitutional issue, we decline to apply the same reasoning to the instant case.  See id. at 147-148 (instruction on lack of alcohol-test evidence implicates defendant's right against self-incrimination).
            [14] Although the defendant did not object to this denial, his initial written request for the instruction preserved the issue for our review.  See Commonwealth v. Drewnowski, 44 Mass. App. Ct. 687, 691 (1998) (defendant's "request for [lesser included] instruction at the charge conference following the close of the evidence sufficed to preserve the issue for our review").
            [15] See note 2, supra.
            [16] The judge gave the instruction before the victim testified about her first complaint, before the first complaint witness (the victim's boyfriend) testified to the first complaint, and as part of his final charge.